**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Irving DAVIS, M. D., Defendant-Appellant.**

**No. 76–3720.**

United States Court of Appeals, Ninth Circuit.

Oct. 11, 1977.

Certiorari Denied Jan. 9, 1978. See 98 S.Ct. 733.

---

George C. Martinez (argued), San Francisco, Cal., for defendant-appellant.

Lawrence Edelman, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

Before BARNES and WRIGHT, Circuit Judges, and JAMESON,* District Judge.

BARNES, Senior Circuit Judge:

A jury convicted Irving Davis, M. D., on 20 counts for having, on 20 separate occasions, unlawfully "prescribed and caused to be distributed to an ultimate user" certain quantities of "controlled substances" listed in 21 U.S.C. § 812 and Title 21 Code of Federal Regulations, Chapter 2, Part 1308, which acts of distribution in each instance were not in the usual course of professional practice and were not for a legitimate medical purpose. The drugs involved herein were Seconal, Ritalin and Tuinal.

---

* Honorable William J. Jameson, Senior District Judge for the District of Montana, sitting by designation.

Counsel for defendant moved (a) for judgment of acquittal, as to each count, at the conclusion of the Government's case (Rule 29 of the Federal Rules of Criminal Procedure ["FRCrP"]); (b) for judgment of acquittal on each count after the case went to the jury (Rule 29(c) of the FRCrP); (c) for a new trial (Rule 33 of the FRCrP); and (d) for arrest of judgment after trial (Rule 34 of the FRCrP). All such motions were denied.

Appellant was sentenced to five years probation, and a fine of $1500 on each of the 20 counts, a total fine of $30,000. This appeal follows. We have jurisdiction. (28 U.S.C. § 1291).

Appellant raises the following issues:

1. Whether 21 U.S.C. § 811 amounts to an unconstitutional delegation of Congressional power.

2. Whether the independent, knowing actions by government agents can be an element of the offense and charged against the defendant.

3. Whether the trial court erred in admitting conclusionary testimony of the government expert.

4. Whether the trial court erred in admitting into evidence certain photographs obtained by allegedly unconstitutional methods and supposedly withheld from defense counsel prior to the day of trial.

5. Whether the trial court erroneously instructed the jury as to the law.

6. Whether the argument of government counsel was plain error within the meaning of Rule 52 of the FRCrP.

7. Whether the evidence was, as to all counts or certain enumerated counts, insufficient as a matter of law.

8. Whether the 20 counts herein were multiplicious. We consider each issue in turn.

I

Appellant initially argues that Congress, in passing the Comprehensive Drug Abuse Prevention & Control Act (herein "the Act") has unconstitutionally delegated its authority to define a crime and specify penalties for its violation to the Attorney General (and to the Administrator of the Drug Enforcement Administration) with respect to amendment of the schedules listed in 21 U.S.C. § 812. Without citing specific case authority, appellant makes the claim that any republishing of the schedules, with any omissions or additions made pursuant to 21 U.S.C. § 811(a)[1], "would in effect, be a determination of a new drug crime and new penalties."

The cases are against any such proposition. *United States v. Benish*, D.C., 389 F.Supp. 557 (1975), affirmed without opinion, *Appeal of Gaich*, 3 Cir., 523 F.2d 1050 (1975), *cert. denied*, 424 U.S. 954, 96 S.Ct. 1428, 47 L.Ed.2d 359 (1976); *United States v. Rosenberg*, 515 F.2d 190, 196–197 (9th Cir.), *cert. denied*, 423 U.S. 1031, 96 S.Ct. 562, 46 L.Ed.2d 404 (1975); *United States v. Piatti*, 416 F.Supp. 1202, 1205 (E.D.N.Y. 1976).

The federal courts have long held that Congress may validly provide a criminal sanction for violation of rules or regulations which it has empowered the President, a cabinet member or an administrative agency to promulgate. *Avent v. United States*, 266 U.S. 127, 130–131, 45 S.Ct. 34, 69 L.Ed. 202 (1924); *McKinley v. United States*, 249 U.S. 397, 399, 39 S.Ct. 324, 63 L.Ed. 668 (1919); *United States v. Grimaud*,

1. 21 U.S.C. § 811(a) provides in relevant part that

". . . the Attorney General may by rule (1) add to such a schedule or transfer between such schedules any drug or other substance if he—

(A) finds that such drug or other substance has a potential for abuse, and

(B) makes with respect to such drug or other substance the findings prescribed by subsection (b) of section 812 of this title for the schedule in which such drug is to be placed; or

(2) remove any drug or other substance from the schedules if he finds that the drug or other substance does not meet the requirements for inclusion in any schedule."

220 U.S. 506, 512–514, 31 S.Ct. 480, 55 L.Ed. 563 (1911); *United States v. Berrigan*, 482 F.2d 171, 182–183 (3rd Cir. 1973). Such delegation of authority must be accompanied by sufficient guidelines and standards for the exercise of the authority. There are sufficient guidelines and standards expressed in the language of 21 U.S.C. § 811 itself (*see* subsections (b) and (c) of § 811), in addition to the application of the protections of the Administrative Procedure Act. *United States v. Eddy*, 549 F.2d 108, 112–113 (9th Cir. 1976).

Appellant relies heavily on two 1935 Supreme Court cases, *Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935) and *Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). The Government quotes 1 Davis, Administrative Law Treatise, Sec. 2.01 in reply.[2] However, the prosecution also relies on the previous decisions of this court based on facts somewhat similar to those here appearing. They are: *United States v. Goldfine*, 538 F.2d 815, 819 (9th Cir. 1976); *Rosenberg, supra*, 515 F.2d at 195; *United States v. Larson*, 507 F.2d 385 (9th Cir. 1974); and particularly the Supreme Court's unanimous decision in *United States v. Moore*, 423 U.S. 122, 144–145, 96 S.Ct. 335, 346, 46 L.Ed.2d 333 (1975). "The implication is that physicians who go beyond approved practice remain subject to serious criminal penalties." *Id.*

We agree that the cases from this circuit, as well as other circuits and districts are controlling on the first issue appellant raises, and that the Act is not constitutionally infirm. In particular, we find the discussion of this issue in *United States v. Piatti, supra*, 416 F.Supp. at 1205–1206, to be convincing and consistent with our conclusion herein. *Cf. United States v. Harper*, 530 F.2d 828 (9th Cir. 1976).

## II

Appellant's second argument is that he cannot be charged with distributing a controlled substance under 21 U.S.C. § 841(a) for two reasons. First, because the persons who received the prescriptions were government agents and not "patients," the appellant contends that he did not *cause* the controlled substances to be distributed (rather, he asserts, it was the agents). Second, he argues that the actions of the agents cannot be charged to him under a principal-agent theory as they are not innocent agents within the meaning of 18 U.S.C. § 2(b). Hence, (his argument goes), he cannot be found to have participated in an essential element of 21 U.S.C. § 841(a), the ultimate distribution of a controlled substance. (All the prescriptions in evidence were obtained from appellant by government agents who falsely pretended they were "patients," or wanted to become such, while never intending to be such.)

The difficulty with appellant's argument is that the appellant was charged with *distributing* controlled substances in violation of § 841(a)(1). 21 U.S.C. § 802(11) states that: "The term 'distribute' means to deliver (other than administering or dispensing) a controlled substance"; and 21 U.S.C. § 802(8) states: "The term 'deliver' or 'delivery' means the actual, constructive or attempted transfer of a controlled substance, whether or not there exists an agency relationship." *See United States v. Bartee*, 479 F.2d 484, 486–487 (10th Cir. 1973). It is clear that, when a doctor steps out of the usual course of his professional duties and writes a prescription for someone for a controlled substance not pursuant to a legitimate medical purpose, he has initiated a transfer of that controlled substance. No one can fill a prescription until some person with authority to issue a prescription first writes and delivers it. No person, whether patient or imposter-patient, can have a pre-

2. ". . . [n]either delegation was to a regularly constituted administrative agency which followed an established procedure designed to afford the customary safeguards to affected parties. The *Panama* case was influenced by exceptional executive disorgani-

zation and in absence of such a special factor would not be followed today. The *Schechter* case involved excessive delegation of the kind that Congress is not likely again to make." 1 Davis, *Administrative Law Treatise*, Section 2.01.

scription filled "but for" a physician's original act of issuing the prescription. *See United States v. Ellzey*, 527 F.2d 1306, 1308 (6th Cir. 1976), *United States v. Green*, 511 F.2d 1062, 1072 (7th Cir. 1975), and *United States v. Hooker*, 541 F.2d 300 (1st Cir. 1976). It follows that by creating the means by which controlled substances can be transferred, a doctor "distributes" within the meaning of 21 U.S.C. § 841(a) by the act of writing a prescription outside the usual course of professional practice and not for a legitimate medical purpose. We hold that because the "patients" were government agents and that they, instead of the doctor, ultimately filled the prescriptions, does not affect the conviction of appellant herein.

### III

■ Appellant's third argument is that the expert testimony of Dr. Frederick Meyers "on the ultimate issue" was improperly admitted. Dr. Meyers testified that the appellant was not prescribing drugs in the usual course of a professional practice and for a legitimate medical purpose. The ready answer to this asserted error is that because this case was tried in November 1976, and because Rule 704 of the Federal Rules of Evidence[3] was adopted January 21, 1975, there was no error.

All the cases cited by appellant in support of this claim of error were decided prior to January 21, 1975. The Government cites four cases which were decided after the Federal Rules of Evidence were adopted; all of which state the testimony of the kind to which appellant objects was admissible. *I. e., United States v. Robinson*, 544 F.2d 110, 113 (2d Cir. 1976); *United States v. McCoy*, 539 F.2d 1050, 1063 (5th Cir. 1976); *United Telecommunications Inc. v. American Television Com. Corp.*, 536 F.2d 1310, 1318 (10th Cir. 1976); *United States v. Al-*

*exander*, 526 F.2d 161, 169 (8th Cir. 1975). We find no error.

### IV

Appellant's fourth argument is that the trial court should not have admitted into evidence Exhibits 21D and 21E because they were allegedly improperly obtained and because they were supposedly withheld from defense counsel.

We have here a technical problem with the record on this appeal, which we discussed at oral argument. It is sufficient to state that Exhibits 21D and 21E, two photographs, are not before this court on this appeal.[4]

■ While we are unable from the record to ascertain precisely what Exhibits 21D and 21E portray, we are convinced from references to such photographs in both the Reporter's Transcript and the parties' briefs, that their admission, if error at all, was harmless error. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966). The exhibits were merely illustrative, cumulative, and corroborative of oral testimony in the record by witnesses Dalton, Detro and McClellan. We also note the Government's expert, Dr. Meyers, did not take such exhibits into consideration in coming to his expert opinion. We therefore hold there was no error justifying reversal.

### V

Appellant's fifth argument is that the trial court erroneously instructed the jury on the third essential element of the 20 offenses charged in the indictment namely:

"Now, *thirdly*, you must also find beyond a reasonable doubt that a physician, who knowingly and intentionally, did dispense or distribute by prescription certain

---

**3.** Rule 704 of the Federal Rules of Evidence states that:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

**4.** (1) Rule 10 of the Federal Rules of Appellate Procedure provides that

"The original papers and *exhibits* filed in the district court . . . shall constitute the record on appeal in all cases."

(2) Appellant requested no exhibits to be included in the record on appeal.

(3) Appellee requested no exhibits to be included in the record on appeal.

controlled substances and did so other than in good faith and not in the usual course of a professional practice, and not in accordance with a standard of medical practice generally recognized and accepted in the United States."

In his brief to this court, appellant asserts that "the objection thereto can be found in R.T. November 19, 1976, pages 33–34." [5]

Appellant's counsel is correct in stating that his objection was made prior to the time the court instructed the jury, and when the instructions were settled.

■■■ Appellant's objection was that the instruction "seems to say if the doctor is guilty of malpractice, he can be found guilty of this crime." The court then read the instruction aloud, as quoted *supra* (including the fact that the doctor must knowingly dispense or distribute by prescription certain controlled substances) and "*did so other than in good faith*"; asking defendant's counsel "what's wrong with that?" (emphasis added). Defendant's counsel answered: "because it doesn't say a good faith attempt." The trial judge then re-read the instruction and declined to change it. We find no error.[6]

## IV

■■■ Appellant's sixth contention was that there were improper arguments engaged in by the United States Attorney which amounted to plain error. A thorough discussion of the alleged improper argu-

ments took place at oral argument among the attorneys for the parties herein and the members of this panel.

Appellant cites good law—that a prosecutor may not state his personal belief in the guilt of a defendant (unless he asserts he is basing his belief on the strength of the evidence in the case), any more than counsel for the defendant may express his personal belief in his client's innocence, (unless he asserts he is basing his belief on evidence alone). The Government attorney did not go so far as to state his personal beliefs as to the defendant's guilt. He did, however, engage in a rambling closing argument and in several instances had to be reminded by the trial judge to keep within evidence produced at trial.

Moreover, at the time of oral argument, it was asserted that several of the prosecutor's statements were necessary arguments to refute what counsel for the defendant had said, either during the trial, or during his opening statement. This is of particular significance in this case because, after the Government's six-page opening statement, the record discloses a 33-page opening statement made by counsel for the defendant—including the use of black-boards, diagrams and charts with heavy emphasis on what the defense counsel thought the law was,[7] or what he thought the evidence might be, and such statements as "that the jury must understand the kind of patients of the kind of doctor you are dealing with a doctor with an office in the tenderloin area

---

**5.** This reference in Appellant's Brief to the pagination of the record is erroneous. It refers to page numbers apparently inserted in "dailies" requested by counsel during trial. The District Clerk's pagination is controlling. The reference should be to R.T. Vol. V, 916.

**6.** A trial judge need not give an instruction proposed by counsel by either side, provided he gives adequate instructions on each element of the case.

"A party has no vested interest in any particular form of instructions . . . the language of the instructions is for the trial court to determine. If on the entire charges it appears that the jury has been fairly and adequately instructed, the requirements of

the law are satisfied." *United States v. Garcia-Rodriguez,* 558 F.2d 956, 965 (decided August 10, 1977, 9th Cir.)

*See also Tucker v. United States,* 151 U.S. 164, 170, 14 S.Ct. 299, 38 L.Ed. 112 (1893); *United States v. Edwards,* 503 F.2d 838, 841 (9th Cir. 1974); *Amsler v. United States,* 381 F.2d 37, 52 (9th Cir. 1967); *Rivers v. United States,* 368 F.2d 362, 364 (9th Cir. 1966).

**7.** For example the defense attorney at one point states: "I think it is sufficient to say that the law states, in effect, that if a doctor writes a prescription for a drug without a medical purpose to a person who is not a patient, without a good faith belief that he is writing it for a medical purpose, that that's improper."

of San Francisco,[8] but that Dr. Davis has never left his patients, and I'm going to say that he has never abandoned his patients"; and "I think that one doctor said to me that: 'Thank Goodness, we have Dr. Davis . . .' "

Counsel for defendant described his client to be a person of advancing age, "has limited use of his left arm," "is practically blind in one eye," and

> "he had an unfortunate experience in connection with his daughter (who) committed suicide, and I am saying this not to generate any sympathy. We are not entitled to under the evidence (sic) but only to give you some insight into the things that limit a person's view of their own abilities and their own way of practicing law (sic) and I will say this to you, that under the law as it's written, I am entitled to bring in evidence, and I will say this first. It doesn't apply to Dr. Davis, but I am entitled to bring, in law, bring in evidence to you indicating that Dr. Davis would be an incompetent doctor and say even if you believe he is incompetent, he is entitled to an acquittal unless he possesses that quality of mind the absence of which requires a conviction; that is to say, the absence of good faith. We are not saying that's true of Dr. Davis. It certainly isn't true, but in any event, these events and circumstances as they apply to Dr. Davis, as they apply to his practice of medicine, do have relevance with the frame of mind in regard to the frame of mind in which he views people as they come up the stairs of his office, as they come into his office, and they say to him words which, to him, mean 'Dr. Davis, I need help.' "

Counsel told the jury in his opening statement how he himself suffered from insom-

nia, how Dr. Davis *could* have given medical examination to all his patients, and "do all kinds of tests *that are completely irrelevant to what (the patient is) talking about, and then send her a bill for 150 to 200 dollars . . . .*"

We could continue a list of matters through which counsel for defendant was permitted to roam in his "opening remarks." We are reminded of the remarks of a judge of this court in *Barzelis v. Kulikowski*, 418 F.2d 869, n.1 (9th Cir. 1969), "We have a low opinion of the planting of this kind of corn in a federal courtroom."

The only significance to the unusual nature of the defendant's opening statement is to demonstrate that perhaps each side went beyond the usual limits of personal opinion in their arguments. However, we hold there was no reversible error. *United States v. Hoskins*, 446 F.2d 564, 565 (9th Cir. 1971).

## VII

■ Appellant's seventh alleged error raises the question of the sufficiency of the evidence to convict. Both the jury and the trial judge determined there was sufficient evidence. Looking at the evidence in the light most favorable to the prosecution, as we must in this case, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), there is no question but that the evidence was sufficient to justify conviction. *United States v. Badia*, 490 F.2d 296, 299 (1st Cir. 1973).

## VIII

■ The eighth issue raised (that 21 U.S.C. § 841 does not contemplate multiplicious charges) is of no merit.[9] *United*

---

**8.** "[This] is an area where you might expect to find underprivileged and poor people, people who have had afflictions in regard to alcoholism, people who have had emotional disturbances . . . who are the down and out, the sufferers, the under-belly of society . . . asking for help to a man who is kindly, who is known . . . as being sympathetic."

**9.** In this case, of the 20 counts filed, all related to different dates, except 2/25/76, 3/10/76, 3/23/76, 3/31/76, on which dates there were, respectively, 2, 4, 2, and 3 prescriptions written. Each prescription was for a different Section II controlled substance, except on 3/10/76. On that date, there were two prescriptions for "Ritalin."

Thus, all were prosecutions for allegedly separate offenses arising out of factually distinct

*States v. Moore,* 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975); *United States v. Hooker,* 541 F.2d 300, 305 (1st Cir. 1976); *United States v. Noel,* 490 F.2d 89, 90 (6th Cir. 1974). Successive prosecutions for separate offenses arising out of separate transactions are not violative of due process. *Sanchez v. United States,* 341 F.2d 225, 229 (9th Cir.), *cert. denied,* 382 U.S. 856, 86 S.Ct. 109, 15 L.Ed.2d 94 (1965).

AFFIRMED.

transactions and there was no denial of due process. *Cf. Sanchez v. United States,* 341 F.2d 225, 229 (9th Cir.), *cert. denied,* 382 U.S. 856, 86 S.Ct. 109, 15 L.Ed.2d 94 (1965).

In *United States v. Moore,* 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), the indictment

covered 639 counts alleging unlawful distribution and dispensation of Methadone (21 U.S.C. § 841(a)(1)), over a 5½ month period. These were reduced before the trial to 40 counts, and the defendant doctor was convicted on 22 counts.