**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jack Edgar BURNES,
Defendant-Appellant.**

No. 86–5119.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 5, 1987.

Decided May 7, 1987.

Thomas K. Buck, Los Angeles, Cal., for defendant-appellant.

Dennis A. Fischer, Santa Monica, Cal., for plaintiff-appellee.

Before PREGERSON and NORRIS, Circuit Judges, and LOVELL,* District Judge.

LOVELL, District Judge:

Following the district court's denial of his motion to suppress evidence, Jack Edgar Burnes entered a conditional guilty plea, pursuant to Fed.R.Crim.P. 11(a)(2), to one count of possession with intent to distribute methamphetamine, a Schedule II controlled substance. The court fined Burnes $25,000 and sentenced him to six years imprisonment plus a special five year parole term. Burnes appeals his conviction and sentence on the grounds that the district court erred in denying his request for an evidentiary hearing to consider the validity of an affidavit supporting a search warrant, *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and that the Drug Enforcement Administration (DEA) lacks authority to reclassify methamphetamine as a Schedule II controlled substance. We affirm the judgment of the district court.

## I. *Background*

By indictment filed in November, 1985, Burnes was charged with one count of possession with intent to distribute 2,196 grams of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). A second count charged possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5845(a)(7), 5861(d), and 5871.[1]

The search warrant which led to the filing of the indictment was executed at defendant's residence by federal and California state officers on July 26, 1985. During the search, the officers seized approximately 2,196 grams of methamphetamine and a .45 caliber silencer. The search warrant was issued on the basis of the affidavit of Richard L. Dickerson, an agent of the California Bureau of Narcotics Enforcement.

In his affidavit, Dickerson stated that he had more than 21 years of experience in law enforcement and more than 17 years of experience in the investigation of narcotics cases. The affidavit also noted that Agent Wadkins, another 17-year veteran of the Bureau of Narcotics Enforcement, had participated in the investigation.

The affidavit stated that on July 24, 1985, Dickerson, Wadkins, and other agents were conducting a surveillance of ChemLab, a chemical supply outlet, in Placentia, California, when Wadkins observed a female adult enter the Chem-Lab building. The woman came out of Chem-Lab with several bottles and boxes, including a

---

* Honorable Charles C. Lovell, United States District Judge, District of Montana, sitting by designation.

1. When Burnes entered his conditional guilty plea to the first count, the Government agreed to dismiss the second count at the time of sentencing.

plastic bottle about one foot tall with a wide mouth, which she placed in the passenger compartment of her car. Agent Wadkins told Dickerson that he had seen similar plastic bottles on previous occasions and that those bottles had contained ephedrine. Ephedrine is used in the manufacture of methamphetamine. Based on Wadkins' experience and observations, Dickerson believed the bottle contained ephedrine.

Agents followed the woman to Burnes' residence. For approximately two minutes, the agents were unable to observe the woman or her car. After the woman left Burnes' residence, the agents followed her to another location, and at that time were able to observe that the items obtained at Chem-Lab were no longer in the passenger compartment of the woman's car. Because the woman and her vehicle had been under constant surveillance except for the two minute gap at Burnes' residence, Dickerson concluded that the woman had taken the chemical supplies into the residence.

Burnes' residence was kept under surveillance from 2:00 P.M. on July 24 until 8:30 P.M. on July 25 and from 7:30 A.M. on July 26 until the execution of the warrant later that day. The affidavit stated that during the afternoon and evening of July 24, the agents observed the arrival and departure of 15 vehicles, and that someone from each vehicle "would enter the residence, remain inside for a short period of time, five to twenty minutes[,] and then leave." Dickerson stated that in his experience such activity was "consistent with and exclusive to trafficking in controlled substances."

Additional statements set forth in the affidavit included an agent's observation of Burnes returning to the residence at 6:30 P.M. on July 25. Burnes was followed by another vehicle which drove around the immediate area for approximately five minutes before stopping at the residence. During that time, the driver appeared to be looking around at vehicles parked in the area. Dickerson stated that in his experience persons engaged in narcotics trafficking often use associates to conduct counter-surveillance activity.

Also included in the affidavit were reports of information regarding Burnes received from informants in 1980 and 1983. Dickerson interviewed two informants in 1983 who reported their purchases of methamphetamine from Burnes "on numerous occasions until 1982." FBI investigators provided information from other informants regarding the manufacture of narcotics by Burnes in early 1983.

Claiming that the affidavit contained deliberate or reckless omissions and misstatements, Burnes moved to suppress all evidence obtained pursuant to the execution of the search warrant. Burnes requested an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The district court held that Burnes had failed to make a substantial showing of deliberate or reckless omissions or false statements material to a determination of probable cause. Consequently, the court denied Burnes' request to suppress evidence and for a *Franks* hearing. After entering a conditional guilty plea, Burnes was convicted of one count of possession with intent to distribute methamphetamine.

Prior to sentencing, Burnes challenged the classification of methamphetamine as a Schedule II controlled substance and moved to limit his possible maximum sentence to five years. The district court denied his motion on the ground that the DEA's reclassification of methamphetamine from a Schedule III to a Schedule II controlled substance was pursuant to a lawful delegation of authority from the Attorney General. Burnes appeals the district court's denial of both of his motions.

## II. *Standard of Review*

The district court's determination whether to hold a *Franks* hearing is reviewed *de novo*. *United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir.1986). The issue of impermissible delegation of authority involves a question of statutory interpretation which this court also reviews *de novo*. *Trustees of Amalgamated Ins. Fund v. Geltman Indus.*, 784 F.2d 926, 929

(9th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986).

### III. *Refusal to Hold a Franks Hearing*

In *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978), the Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

In *Franks,* the Court expressly recognized that there is "a presumption of validity with respect to the affidavit supporting the search warrant," and also that "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 171–72, 98 S.Ct. at 2684 (footnote omitted).

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court held that a "totality of circumstances" test should be applied in determining whether the affidavit established probable cause, *id.* at 230–31, 103 S.Ct. at 2328–29, and that "so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* at 236, 103 S.Ct. at 2331 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)).

In applying the rules of *Franks* and *Gates,* this court has recognized that where a substantial preliminary showing is made, the court must hold a hearing to determine if any false statements deliberately or recklessly included in the affidavit were material to the magistrate's finding of probable cause. *United States v. Stanert,* 762 F.2d 775, 780, *modified,* 769 F.2d 1410 (9th Cir. 1985)). If the affidavit is insufficient to establish probable cause without the false material, the court must set aside the search warrant and suppress the fruits of the search. *United States v. Foster,* 711 F.2d 871, 879 (9th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984). These rules also apply to the omission of facts from the affidavit. *Stanert,* 762 F.2d at 781.

We have also held that "[i]n doubtful cases, preference should be given to the validity of the warrant." *United States v. McQuisten,* 795 F.2d 858, 861 (9th Cir. 1986). Moreover, "opinions and conclusions of an experienced agent regarding a set of facts are properly a factor in the probable cause equation under the *Gates* totality of the circumstances approach." *United States v. Michaelian,* 803 F.2d 1042, 1045 (9th Cir.1986).

Burnes alleges that agent Dickerson's affidavit contains several false statements or omissions. Burnes raises four issues with respect to the validity of the affidavit. First, Burnes claims that there was an insufficient basis for the affiant to conclude from his observation of the bottle that it probably contained ephedrine. Second, Burnes claims the affiant's opinion that the woman left the chemicals at Burnes' residence is too speculative. Third, Burnes claims the statements relating to the observed traffic at Burnes' residence are false. Relying on the Bureau of Narcotics Enforcement investigation report, Burnes points out that, contrary to the statements in the affidavit, most of the observed traffic stayed at Burnes' residence for more than twenty minutes. Finally, Burnes claims that the statements in the affidavit concerning counter-surveillance are misleading.

Only one of the alleged false statements or omissions could be said to be deliberate or reckless. The affidavit states that, during the surveillance of Burnes' residence, agents observed numerous vehicles make short, five to twenty minute, stops at the residence. Dickerson stated further that such activity "is consistent with and exclusive to trafficking in controlled substances." The Bureau of Narcotics En-

forcement investigation report, however, indicates that occupants of only four vehicles stayed at the residence between five and twenty minutes. The occupants of nine of the remaining vehicles stayed between twenty minutes and fifty minutes. The occupants of two vehicles stayed for more than one hour.

■ The other alleged false statements and omissions do not justify a Franks hearing either because Burnes has not demonstrated the requisite degree of culpability or because they are not false statements or omissions. While further investigation by the officers might have revealed that the chemical bottle obtained by the woman at Chem-Lab is not unique to ephedrine, the most that can be said of the officers' failure to further investigate is that they were negligent. There is no indication in the record that their failure was deliberate or reckless or that the statements made were deliberately or recklessly false. Rather, the record demonstrates that the conclusion as to the contents of the bottle was made based on the observations and the combined experience of two veteran narcotics investigators. Mere negligence in "checking or recording the facts relevant to a probable-cause determination" is not sufficient to warrant a Franks hearing. Franks, 438 U.S. at 170, 98 S.Ct. at 2683. See also United States v. Brooklier, 685 F.2d 1208, 1221 (9th Cir.1982). Burnes' claim with respect to the "two minute gap" and the counter-surveillance are equally unavailing. The facts underlying the officers' conclusions were set forth in the affidavit. The affiant's conclusions with respect to those facts were reasonable and based on experience. The mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit. The conclusions with respect to the "two minute gap" and the counter-surveillance cannot be considered either a false statement or an omission.

■ Therefore, Burnes' only legitimate claim is that the affidavit contained a reckless and false statement about the duration of the cars' visits to his residence. However, elimination of this false statement from the affidavit does not preclude a finding of probable cause. As the investigation report demonstrates the affidavit correctly states that several vehicles made relatively short stops at Burnes' residence. There is a strong inference that a woman left chemicals, purchased from a chemical supply house known to supply manufacturers of illegal substances, at Burnes' residence. The affidavit also recites countersurveillance activity consistent with drug trafficking. Information from several informants regarding Burnes' prior trafficking of methamphetamine was corroborated by contemporary activity consistent with drug trafficking. Moreover, "[t]he passage of time is not necessarily a controlling factor in determining the existence of probable cause." Foster, 711 F.2d at 878. Even when purged of the statements concerning the length of the car visits to Burnes' residence, the affidavit contains a substantial basis on which the magistrate could determine that the totality of circumstances established probable cause. The district court did not err in refusing to hold a Franks hearing.

## IV. *Classification of Methamphetamine*

The Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801–970 (the Act), established five schedules of controlled substances and specified the initial classification of substances in each schedule. 21 U.S.C. § 812(a). The Act gives authority to the Attorney General to add substances to the schedules transfer substances between schedules, or remove substances from the schedules in accordance with certain statutorily specified procedures and criteria. 21 U.S.C. § 811(a). In 1973, the Attorney General delegated all of these functions under the Act to the DEA. 28 C.F.R. § 0.100(b). Subsequently, the DEA reclassified methamphetamine from a Schedule III controlled substance to a Schedule II controlled substance. As a result, the maximum penalty under 21 U.S.C. § 841(b) for possession of methamphetamine with intent to distribute increased from five years' imprisonment and a $25,000 fine to fifteen years imprisonment and a $125,000 fine.

Burnes contends that the Act authorizes only the Attorney General himself to schedule and reschedule controlled substances. Burnes relies in part on the language of 21 U.S.C. § 811(a), which provides in pertinent part:

[T]he Attorney General may by rule—

(1) add to such a schedule or transfer between such schedules any drug or other substance if he—

(A) finds that such drug or other substance has a potential for abuse, and

(B) makes with respect to such drug or other substance the findings prescribed by [21 U.S.C. § 812(b)] for the schedule in which such drug is to be placed; or

(2) remove any drug or other substance from the schedules if he finds that the drug or other substance does not meet the requirements for inclusion in any schedule.

Burnes argues that the specific use of the word "he" demonstrates Congress' intent to restrict this authority to the Attorney General.

Burnes relies on *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). In *Giordano*, the Supreme Court held that the power to authorize wiretapping was vested exclusively in the Attorney General or his specifically designated Assistant Attorney General and that the power could not be delegated. *Id.* at 512–23, 94 S.Ct. at 1825–30. The Court found a Congressional intent to limit the Attorney General's ability to delegate the power to authorize wiretapping in the language of 18 U.S.C. § 2516, which confers such power to the "Attorney General, or any Assistant Attorney General specifically designated by the Attorney General." *Id.* at 514, 94 S.Ct. at 1826.

Burnes' reliance on *Giordano* is misplaced. The statutory scheme involved in this case is not as restrictively drafted as the wiretap provisions. In fact, under 21 U.S.C. § 871(a), the Attorney General is authorized to "delegate any of his func-

tions under [the Act] to any officer or employee of the Department of Justice." This section echoes the generalized statement concerning delegation of authority contained in 28 U.S.C. § 510.[2]

Appellant asserts, however, that the Attorney General's delegation power is limited by 21 U.S.C. § 878, which provides:

Any officer or employee of the Drug Enforcement Administration designated by the Attorney General may—

(1) carry firearms;

(2) execute and serve search warrants, arrest warrants, administrative inspection warrants, subpenas [sic], and summonses issued under the authority of the United States;

(3) make arrests without warrant (A) for any offense against the United States committed in his presence, or (B) for any felony, cognizable under the laws of the United States, if he has probable cause to believe that the person to be arrested has committed or is committing a felony;

(4) make seizures of property pursuant to the provisions of this subchapter; and

(5) perform such other law enforcement duties as the Attorney General may designate.

Burnes contends that section 878 is an exclusive statement of the powers of the DEA, that section 878 restricts the powers of the DEA to law enforcement, and thus that the delegation of legislative powers to the DEA contravenes federal law.

■ When resolving a question of statutory interpretation, courts must give effect to the plain meaning of the language used. *Pacific Mut. Life Ins. Co. v. American Guar. Life Ins. Co.*, 722 F.2d 1498, 1500 (9th Cir.1984). *See also* 2A J. Sutherland, *Statutes and Statutory Construction* § 47.29 (C. Sands 4th ed. 1984). The power of the Attorney General to delegate his authority under the Act in question is clearly conferred by 21 U.S.C. § 871(a), which allows the delegation of *"any* of his func-

---

**2.** Section 510 provides: "The Attorney General may from time to time, make such provisions as he considers appropriate authorizing the per-

formance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General."

**1360**

tions" under the Act. (emphasis added). Moreover, no provision expressly limits the powers of the DEA to those found in 21 U.S.C. § 878.

The courts which have addressed contentions similar to those advanced by Burnes have uniformly concluded that the Attorney General may lawfully delegate his authority to classify controlled substances. *United States v. Lippner,* 676 F.2d 456, 461 (11th Cir.1982); *United States v. Gordon,* 580 F.2d 827, 840 (5th Cir.), *cert. denied,* 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978) (Congress' delegation to Attorney General and his subdelegation to DEA is not unconstitutionally vague nor does it violate the doctrine of separation of powers). Although this court has not directly considered the subdelegation of authority from the Attorney General to the DEA, it has held the Act to be a valid delegation of authority by Congress. *United States v. Davis,* 564 F.2d 840, 844 (9th Cir.1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 733, 54 L.Ed.2d 760 (1978). In *Davis,* the court implicitly approved subdelegation to the DEA, stating that the defendant had challenged the delegation of authority "to the Attorney General (*and to the Administrator of the Drug Enforcement Administration.*)" *Id.* at 843 (emphasis added). Again, in *United States v. Alexander,* 673 F.2d 287, 289 (9th Cir.) (per curiam), *cert. denied,* 459 U.S. 876, 103 S.Ct. 168, 74 L.Ed.2d 139 (1982), this court reiterated its holding in *Davis* and referred to the Attorney General as the "head" of the DEA.

Under well-established principles of statutory interpretation, it is clear that the delegation of authority to reclassify controlled substances to the DEA is a proper exercise of the Attorney General's authority. Our holding is consistent with the prior holdings of this court and other courts. Burnes' contention that the district court could not impose a penalty in excess of five years imprisonment or a $25,000 fine is without merit.

### V. *Conclusion*

We hold that Burnes did not make a sufficient preliminary showing to warrant a *Franks* hearing, and that the Attorney General lawfully delegated his authority to classify controlled substances to the DEA. Accordingly, the judgment of the district court is

AFFIRMED.