**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Vince Lee MOTZ, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joseph Arlen LANGER, Defendant–Appellant.**

**Nos. 90–30174, 90–30178.**

United States Court of Appeals, Ninth Circuit.

Submitted March 4, 1991.*

Memorandum March 21, 1991.

Order and Opinion June 17, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Richard L. Fredericks, Oakridge, Or., for defendant-appellant Vince Lee Motz.

Robert J. Larson, Eugene, Or., for defendant-appellant Joseph Arlen Langer.

Thomas M. Coffin, Asst. U.S. Atty., Eugene, Or., for plaintiff-appellee.

Before BROWNING, WRIGHT and FARRIS, Circuit Judges.

### ORDER

The memorandum disposition filed March 21, 1991, is redesignated with slight modifications as an opinion authored by Judge Farris.

### OPINION

FARRIS, Circuit Judge:

Vince Lee Motz and Joseph Arlen Langer appeal their convictions and sentences upon their guilty pleas to manufacturing marijuana (Motz) and conspiring to manufacture marijuana (Langer). They argue that the court erred in refusing to suppress evidence and in determining their sentences. We affirm.

### Facts and Proceedings

Drug enforcement agents searched Motz's property on June 6, 1989, and seized 725 marijuana plants, marijuana leaves, grow equipment, and drug records. Agents searched Langer's vehicle, which was parked on Motz's property, and found records linking Langer with the grow operation. On Richard Camacho's property, located adjacent to Motz's property, agents found 1,113 marijuana plants.

Motz and Langer were indicted for manufacturing marijuana plants in violation of 21 U.S.C. § 841(a)(1). The court denied the defendants' motions to suppress evidence. Motz thereafter pleaded guilty to manufacturing marijuana and was sentenced to 51 months imprisonment plus three years of supervised release. Langer pleaded guilty to conspiring to manufacture marijuana and was sentenced to 63 months imprisonment plus three years of supervised release.

### Discussion

1. **Probable cause**

The search was conducted pursuant to a warrant obtained on June 1, 1989. The warrant affidavit contained: (1) a confidential informant's description of Motz's marijuana-growing activity from 1983 until 1987; (2) DEA agents' report of observations made during a fly-over of Motz's property in May, 1989; and (3) the agents' description of loud generators they heard operating when they approached Motz's property on foot in May, 1989.

Motz and Langer argue that the warrant affidavit contained false statements and corroborating information obtained in violation of their Fourth Amendment rights, without which the affidavit did not show probable cause. We review *de novo* the district court's ruling as to probable cause, *United States v. Elliott*, 893 F.2d 220, 222 (9th Cir.), *cert denied*, —— U.S. ——, 111 S.Ct. 268, 112 L.Ed.2d 224 (1990), and accept the findings of fact underlying the decision unless clearly erroneous. *See id.*

a. *False statements in warrant affidavit*

 Where the defendant makes a substantial preliminary showing that a false statement (1) was deliberately or recklessly included in the affidavit and (2) was material to the magistrate's finding of probable cause, the court must hold a hearing to investigate the veracity of the affiant. *United States v. Burnes*, 816 F.2d 1354,

1357 (9th Cir.1987) (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978)); *see United States v. Dozier*, 844 F.2d 701, 705 (9th Cir.), *cert. denied*, 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988) (defendant must prove by preponderance of evidence that there was knowing and intentional falsehood or reckless disregard for truth and that challenged statement was essential to finding probable cause). The district court's decision regarding a *Franks* hearing is reviewed *de novo*. *Burnes*, 816 F.2d at 1356.

■ The affidavit contained an inaccurate statement that Carl Wilbering, father-in-law of one of the suspects, John Sousa, had been arrested on drug charges and omitted that the informant was involved in a lawsuit against Sousa. The record satisfies us that the inaccuracies were negligent and did not require a Franks hearing. The affiant testified that: (1) it was not unusual for an arrest not to appear on the state police computer; (2) Oregon State Trooper Jesse Haskins verified that Wilbering's arrest was drug-related; and (3) the affiant thought the informant's possible reasons for cooperating need not be included in the affidavit. *See Dozier*, 844 F.2d at 705 (misstatement that Dozier had multiple drug convictions when he in fact had only one was attributable to negligence because affiant did not know how to read California rap sheet).

Further, the disputed facts were not material to the magistrate's finding of probable cause. The crucial information was the informant's detailed and corroborated account of Motz's growing operation from 1983 until 1987. The district court's finding that the informant was credible was not error. *See Burnes*, 816 F.2d at 1357 (citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *Dozier*, 844 F.2d at 705.

The warrant affidavit included a report of observations made by DEA agents during a fly-over of Motz's property in May, 1989. Motz and Langer argue that from the air it was impossible to identify the plants in Motz's greenhouses as marijuana. The agent who conducted the fly-over testified that: (1) he had viewed one hundred or more marijuana growing operations; (2) the color of the plants was consistent with marijuana; and (3) the setup of the operations with large generators was consistent with marijuana growing operations he had seen. The district court properly considered the agent's testimony. "[O]pinions and conclusions of an experienced agent regarding a set of facts are properly a factor in the probable cause equation under the *Gates* totality of the circumstances approach." *Burnes*, 816 F.2d at 1357 (quoting *United States v. Michaelian*, 803 F.2d 1042, 1045 (9th Cir.1986).

*b. Corroborating information allegedly obtained in violation of fourth amendment rights*

The affidavit included a report of large generators heard by DEA agents during surveillance on foot of Motz's property. Motz and Langer argue that the agents criminally trespassed on Motz's property in violation of Oregon Revised Statute § 164.245 during the surveillance and that the trespass violated their Fourth Amendment rights. We reject the argument.

There is evidence that the agents did not trespass onto Motz's property. Agent Miles testified that he and Agent Troy walked up dirt roads near Motz's property, crossed one or two barbed wire fences, and sat on a rock outcropping approximately ¼ mile from Motz's house and ⅛ mile from Camacho's house. He stated that they were on Camacho's property, not Motz's.

A warrantless investigation considerably more intrusive than the surveillance in this case has been upheld against a Fourth Amendment challenge. *See United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (area near barn 50 yards from fence surrounding ranch house was not within curtilage of house for Fourth Amendment purposes). In *Dunn*, DEA agents crossed a perimeter fence surrounding defendant's ranch, an interior fence, and two fences surrounding defendant's

barn. The Court emphasized that: (1) 50 yards was a substantial distance from defendant's house, which was enclosed by a fence; (2) the barn was outside the area immediately surrounding defendant's house enclosed by fence; (3) the agents had reason to believe the barn was not used for intimate activities of the home; and (4) the fences were designed to corral livestock, not to prevent persons from observing what lay on the other side.

### 2. Warrant return

Fed.R.Crim.P. 41(d) provides that "[t]he return shall be made promptly and shall be accompanied by a written inventory of any property taken." Motz and Langer argue that the 725 marijuana plants seized from Motz's property should be suppressed because the warrant return was filed approximately ten weeks after the search and failed to list the plants seized.

■ Failure to comply with Rule 41 requires suppression of property seized only where agents would not have carried out the search and seizure had they been required to follow the rule and where they "intentional[ly] and deliberate[ly] disregard[ed] ... a provision in the Rule." *United States v. Freitas*, 800 F.2d 1451, 1456 (9th Cir.1986) (quoting *United States v. Stefanson*, 648 F.2d 1231, 1235 (9th Cir. 1981)). The agents executed a valid search. Motz and Langer were not prejudiced by the agents' failure to perform the ministerial requirements of Rule 41(d). The district court was correct in refusing to suppress the evidence.

### 3. Search of Langer's vehicle

■ The search warrant applied to Motz's property, including vehicles belonging to or used by residents on the property. Langer argues that the search of his vehicle exceeded the scope of the warrant because he was not a resident.

Before the agents searched Langer's car, they had reason to believe Langer was involved in the conspiracy and was temporarily staying on the Motz property. Agent Miles testified that the confidential informant stated that he had met Motz's financial backer, a man named Joe, who lived in Arizona and who periodically visited Motz. Before Agent Miles ordered that the vehicle be searched, Mrs. Motz and the Motz children told him that the vehicle belonged to Joe Langer, a friend of the family who was helping Motz with building. We find no error. The warrant did not limit the search to vehicles of permanent or legal residents.

### 4. Sentencing based on 1838 plants at equivalent of 100 grams of marijuana per plant

■ Motz and Langer were sentenced under the 1988 guidelines for growing 1838 plants, each treated as the equivalent of 100 grams of marijuana.[1] They challenge the constitutionality of the "1 plant = 100 gm." equivalency on the basis that there is no evidence that it is accurate. Motz and Langer misunderstand the significance of the conversion table. The table does not state that the yield of a plant is 100 grams, but rather that the offense level for a crime involving one marijuana plant is the level that would apply in a case involving 100 grams of dried marijuana. There is no constitutional requirement that the penalty for an offense involving one marijuana plant be equal to the penalty for an offense involving the quantity of dried marijuana the plant would yield. *See United States v. Chan Yu–Chong*, 920 F.2d 594, 597–98 (9th Cir.1990) (quoting *United States v. Savinovich*, 845 F.2d 834 (9th Cir.), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988)) (sentencing scheme that penalizes offense involving larger quantity of below-street-quality heroin more harshly than smaller quantity of purer heroin is constitutional); *see also United States v. Corley*, 909 F.2d 359, 361–62 (9th Cir.1990)

---

**1.** Because Motz and Langer were sentenced on May 2, 1990, the court should have applied the 1989 guidelines which provide that for offenses involving 50 or more plants, each plant is equivalent to one kilogram. However, because the parties have not raised this issue, we do not reach it.

(seedling is a plant for guideline purposes); *United States v. Carlisle,* 907 F.2d 94, 95 (9th Cir.1990) (cutting is a plant for guideline purposes). We have recognized that the eventual yield of a plant is unknown. *Corley,* 909 F.2d at 361.

Further, the Guidelines are consistent with congressional intent as expressed in 21 U.S.C. § 841(b). Congress has provided for imprisonment of ten years to life for offenses involving 1000 or more marijuana plants. 21 U.S.C. § 841(b). Motz's 51–month prison term plus three-year supervised release term and Langer's 63–month prison term plus three-year supervised release term are less severe than even the minimum penalty imposed under the statute. *Cf. United States v. Streeter,* 907 F.2d 781, 790–91 (8th Cir.1990) (sentence for offense involving nineteen plants must be based on actual weight of plants because of congressional intent that only in offenses involving more than 50 plants would sentence be based on number of plants regardless of weight).

5. Motz's responsibility for plants grown by his neighbor, Richard Camacho

■ Motz argues that the district court improperly considered 1113 marijuana plants grown by his neighbor, Richard Camacho, in calculating his sentence. The sentencing court determines offense level in drug-related cases on the basis of all acts that are part of the same course of conduct or common scheme or plan as the offense of conviction. *See* United States Sentencing Guidelines §§ 1B1.3(a)(2), 3D1.-2(d). The district court's findings of fact are reviewed for clear error, and due deference is given to its application of the guidelines to the facts. *United States v. Turner,* 898 F.2d 705, 708 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990).

The record contains evidence that Camacho was involved in a marijuana growing operation with Motz and Langer. At Motz's house agents found a note that stated: "All growing methods will be Vince's" [Motz's], and "Vince handles all money, period." Camacho testified that Langer had written the note and Motz had delivered it to him. Camacho stated that Motz instructed him on growing methods and delivered money advanced by Langer to finance his operation. The district court could properly believe Camacho's testimony. Its conclusion that the marijuana plants grown by Camacho were part of the same course of conduct or common scheme or plan as the growing operation on Motz's own property was not clearly erroneous.

6. Enhancement of Langer's sentence for his role as leader or organizer

■ Under guideline section 3B1.1(c) the offense level is increased by 2 levels if the defendant was an organizer, leader, manager, or supervisor in the criminal activity. The record contains evidence that Langer financed Camacho's growing operation and home, and that Langer was to receive 80% or 90% of Camacho's harvested marijuana in partial payment of the debts. The record also contains evidence that Langer financed Motz's growing operation. That Motz and Camacho were obligated under the arrangement to sell their crop to Langer, coupled with the fact that without Langer there would not have been financial backing for the operation, supports the district court's finding that Langer was the leader of the conspiracy. *See United States v. Avila,* 905 F.2d 295, 298–99 (9th Cir.1990) (defendant's coordinating procurement and distribution of drugs supported sentencing as leader); *United States v. Carvajal,* 905 F.2d 1292, 1296 (9th Cir.1990) (defendant's overall control of drug transaction warranted sentencing as leader). Enhancement of Langer's sentence for his role as leader or organizer was not clearly erroneous.

7. Constitutionality of guidelines and burden of proof at sentencing

We have previously rejected Motz's argument that the guidelines violate separation of powers doctrine, *see United States v. Belgard,* 894 F.2d 1092 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 164, 112 L.Ed.2d 129 (1990), and Langer's argument

that the government's burden under the guidelines should be proof by "reasonable doubt" or "clear and convincing evidence." *See United States v. Howard,* 894 F.2d 1085, 1090 (9th Cir.1990). We adhere to those rulings.

AFFIRMED.