**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank Joseph FLOWERS a/k/a Yusuf
Abdir Rashid, Defendant-Appellant.**

No. 85–1783.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 26, 1987.

Decided Feb. 19, 1987.

As Amended May 4, 1987.

Gerald Skoch, argued, Lakewood, Ohio, for defendant-appellant.

Wayne F. Pratt, argued, Detroit, Mich., for plaintiff-appellee.

Before KEITH and KENNEDY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Defendant-appellant Frank Joseph Flowers, also known as Yusuf Abdir Rashid ("defendant"), was convicted of conspiracy to distribute and attempt to distribute controlled substances by false prescriptions in violation of sections 841(a)(1) and 846 of the

Controlled Substances Act, 21 U.S.C. §§ 801–966 (1982) ("Act"). He raises five issues on appeal: (1) that the District Court erred in not dismissing the conspiracy count where it had dismissed another count that charged defendant with the distribution of false prescriptions; (2) that the evidence was insufficient to support a conviction; (3) that the indictment failed to apprise defendant of the charges against him; (4) that the District Court erred in failing to consider a lesser included offense; and (5) that the District Court judge should have recused himself from deciding the case because he had heard defendant's withdrawn guilty plea, and read a pre-sentence report.

The testimony at trial established that defendant, who is not a licensed physician, obtained blank prescriptions from a printer. These prescriptions bore the name and address of a legitimate clinic, but the printed telephone number was the home telephone number of defendant. Defendant and co-defendant Beck employed several women to write out false prescriptions for controlled substances on these printed prescriptions. The forged prescriptions were either sold or used by members of the conspiracy to purchase controlled substances which in turn were sold. These forged prescriptions were filled at various pharmacies in the Detroit area. When a pharmacist would call to verify the prescription, the telephone would ring at defendant's apartment. Defendant or a co-conspirator would assure the pharmacist that the prescription was legitimate.[1]

In November, 1983, the false prescription scheme expanded. Defendant rented a storefront and had new prescription pads printed. These pads contained the name of an illegitimate medical clinic, with the correct telephone number and address for the storefront. Several women were also employed to answer telephones, verify prescriptions, and forge prescriptions on the new paper. These prescriptions were also filled at various pharmacies in the Detroit area.

Defendant was charged in two counts of a seven-count indictment. Count one charged defendant and two others with conspiracy to distribute controlled substances by false prescriptions in violation of sections 841(a)(1)[2] and 846.[3] Count six charged defendant with the distribution of false percodan prescriptions and with aiding and abetting in the attempted distribution of percodan in violation of section 841(a)(1).

On October 2, 1984, defendant pled guilty to count one. On January 10, 1985, the District Court granted defense counsel's motion to withdraw as counsel for defendant. New counsel was appointed and assisted defendant in filing a motion to withdraw his guilty plea. After an evidentiary hearing, the court granted this motion. After two days of jury selection, defendant requested that he be allowed to represent himself with the assistance of standby counsel, and that he be allowed to waive a jury trial. The court granted defendant's requests.

After a bench trial, defendant was found guilty under count one. The court dismissed count six concluding that section 841(a)(1) did not proscribe the distribution of false percodan prescriptions, the essence of the sixth count.

■ Defendant raises several issues in his first argument that the conspiracy count should have been dismissed. Initially, he contends that because the court dismissed count six charging the distribution of false prescriptions, he cannot be convicted under count one for conspiring to distribute false prescriptions. He asserts that

1. Defendant and his co-conspirators occasionally sold forged prescriptions directly to individuals, including an undercover FBI agent.

2. Section 841(a)(1) at the time of the offense provided in pertinent part:
   [I]t shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

3. Section 846 provides in pertinent part:
   Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both....

because the court dismissed the sixth count, the distribution of false prescriptions is legal. Defendant's argument is misplaced for two reasons. First, the court dismissed count six because it concluded that the basis of the count was the distribution of false percodan prescriptions in violation of 21 C.F.R. § 1306.04, a regulation promulgated under section 841(a)(1). The court concluded that this regulation was not intended to apply to persons other than licensed physicians or pharmacists. Second, defendant misreads the plain language of count one. It states that defendant "did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree with various other persons ... to distribute and attempt to distribute controlled substances, by false prescriptions, all outside the course of legitimate medical practice or purpose...." Count one further provided: "It was part of said unlawful conspiracy that in order to obtain controlled substances for distribution, the various co-conspirators and defendants herein would arrange for the printing, signing, distribution, filling, and verifying of forged prescriptions...." *See* Joint Appendix at 17–18. Thus, defendant was indicted and convicted under sections 841(a)(1) and 846 of conspiring to distribute and attempting to distribute controlled substances *by* the use or means of false prescriptions. He was not convicted under count one for conspiring to distribute false prescriptions.[4]

■ Defendant also contends that insufficient evidence existed to support his conviction of this offense. According to defendant, the only evidence at trial concerning the distribution of controlled substances came from an unindicted co-conspirator in the case. That evidence was sufficient for a finding of distribution. Defendant fails to recognize, moreover, that it is the illegal agreement that is the essence of the crime of conspiracy and that the evidence is overwhelming that the conspirators entered into their agreement in order to achieve the dispensing and distribution of controlled substances.

■ Even if the conspiracy is limited to the forged prescriptions, the writing of the illegal prescriptions completes all the elements of the offense prohibited by section 841(a)(1). Section 802(10) defines the term "dispense" as delivery of a controlled substance to an ultimate user. The term "delivery" is defined in section 802(8) as the "actual, constructive, or attempted transfer of a controlled substance...." As the Third Circuit concluded in *United States v. Tighe*, 551 F.2d 18 (3d Cir.), *cert. denied*, 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977), a prescription for a controlled substance "cannot be regarded as less than the constructive or attempted transfer of the substance itself, since a prescription is the written representation of the drug and enables its possessor to claim physical custody and control over the drug prescribed." 551 F.2d at 20. Thus, we conclude that Congress intended that a person could violate section 841(a)(1) without actually distributing the controlled substances, but only by writing a prescription for their distribution.[5]

A number of other circuits have reached this conclusion. In *United States v. Stump*, 735 F.2d 273 (7th Cir.), *cert. denied*, 469 U.S. 864, 105 S.Ct. 203, 83 L.Ed.2d 134 (1984), defendant, a licensed physician, was convicted on twenty-five counts of illegally prescribing controlled substances in violation of section 841(a)(1). Defendant argued, *inter alia*, that insuffi-

---

**4.** The District Court concluded: "this Court finds [defendant] guilty beyond a reasonable doubt under Count One of the indictment of conspiring with Beck, LeFlore, Spates, and Carson to distribute percodan and desoxyn in violation of 21 U.S.C. §§ 846 and 841(a)(1)." *See* Joint Appendix at 111–12.

**5.** The Supreme Court in *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), and this Circuit in *United States v. Kirk*, 584 F.2d 773 (6th Cir.), *cert. denied*, 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 708 (1978), upheld the convictions of physicians who had been found in violation of section 841(a)(1) by virtue of selling prescriptions for controlled substances outside the usual course of professional practice. Although the issue of whether selling prescriptions can alone constitute a crime under section 841(a)(1) was not specifically addressed by either Court, both decisions implicitly support the proposition that a nonphysician issuing prescriptions can be convicted under section 841(a)(1).

cient evidence existed establishing that he knowingly prescribed controlled substances in an unlawful manner. The court concluded that improperly issuing a prescription is sufficient to warrant a conviction under the Act even though defendant did not actually distribute the drugs. 735 F.2d at 275–76.

Similarly, in *United States v. Davis*, 564 F.2d 840 (9th Cir.1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 733, 54 L.Ed.2d 760 (1978), defendant, a licensed physician, was convicted of unlawfully prescribing controlled substances in violation of section 841(a)(1). He contended, *inter alia*, that he could not have been found to have participated in an essential element of section 841, namely the ultimate distribution of a controlled substance. The court disagreed. Relying on the definition of distribute and deliver, the court concluded, "by creating the means by which controlled substances can be transferred, a doctor 'distributes' within the meaning of [section 841(a) ] by the act of writing a prescription outside the usual course of professional practice and not for a legitimate medical purpose." 564 F.2d at 845. *See also United States v. Green*, 511 F.2d 1062, 1072 (7th Cir.), *cert. denied*, 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404 (1975), *United States v. Bartee*, 479 F.2d 484, 488 (10th Cir.1973) (writing the prescription completes all the elements of the crime in a section 841(a)(1) case).

■ Defendant's additional contention that the indictment failed to apprise him of the charge of conspiring to distribute, attempting to distribute, and distributing controlled substances is meritless. Count one of the indictment states that defendant "did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree ... to distribute and attempt to distribute controlled substances, by false prescriptions ... contrary to the provisions of section 841(a)(1)...." It does not, as defendant argues, charge him with conspiring to distribute false prescriptions; it charges him with conspiracy to distribute controlled substances. Thus, because the indictment contains the elements of the offense charged, fairly informs defendant of the charge against him, and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense, it is sufficient. *See United States v. Seelig*, 622 F.2d 207, 211 (6th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980) (citing *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)).

■ Defendant next contends that the District Court erred in not considering whether defendant was guilty of a lesser included offense, conspiracy to violate sections 353 and 331(k) of the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301–392 (1982). We conclude that these offenses are not lesser included offenses of section 841, the basis of the charge in the indictment. Section 353(b) applies to all prescription drugs, which may or may not be controlled substances. Section 841(a)(1) applies to all controlled substances, which may or may not be prescription drugs. Furthermore, sections 353(b) and 331 require that the drug in question be misbranded while section 841 contains no such requirement.

■ Finally, defendant contends that the District Court judge erred in failing to recuse himself from the non-jury trial because he ruled on motions, admission of evidence, and had personal knowledge of the facts of the case. This contention is also without merit. First, 28 U.S.C. § 144 (1982) requires the party challenging the judge's impartiality to submit an affidavit alleging partiality to the judge before whom the matter is pending. Defendant in the present case failed to satisfy this requirement. Second, Canon 3(c) of the Code of Judicial Conduct provides that judges should disqualify themselves when they have personal knowledge of disputed evidentiary facts. The judge in the present case, however, did not acquire these facts from an extra-judicial source. *Cf. United States v. Story*, 716 F.2d 1088, 1091 (6th Cir.1983). Third, although 28 U.S.C. § 455 requires judges to disqualify themselves for personal bias in the absence of a party complaint, defendant in the present case fails to establish such personal bias. As stated above, all the information the judge acquired about the case arose from his

association with the proceeding. As this Court stated in *Story*, this is insufficient to support a finding of partiality. *Id.* at 1090–91. Defendant waived his right to a jury trial after the guilty plea had been set aside. The Assistant United States Attorney questioned defendant about his decision to waive a jury trial, pointing out that the judge deciding the facts would be the same judge who heard his guilty plea and reviewed the pre-sentence report. Defendant responded that if he felt that the judge would be prejudiced, he would prefer another judge. Judge Freeman told defendant that he would not be prejudiced by the information he had learned, and neither defendant nor his counsel challenged this assertion or requested another judge. Additionally, defendant persisted in his request to have the case decided by Judge Freeman after a noon recess, the afternoon following the questioning.

Accordingly, the decision of the District Court is AFFIRMED.