857 F.2d 1475
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Joe LACEY, Defendant-Appellant.
 No. 87-5993.
 United States Court of Appeals, Sixth Circuit.
 Sept. 16, 1988.
 
 Before WELLFORD and ALAN E. NORRIS, Circuit Judges, and JULIAN A. COOK, District Judge.*
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 In this appeal, we consider the sufficiency of the evidence to support defendant's conviction of conspiracy to possess with intent to distribute and to distribute cocaine, and the admissibility of certain recorded telephone conversations between alleged coconspirators.
 
 
 2
 An investigation of drug activities in Memphis, Tennessee led law enforcement officers to Memphis International Realtors, a business firm operated by Freeman Monger as a front for the distribution of drugs. Agents of the Drug Enforcement Administration obtained judicial authorization to place a wiretap on the business telephone. The wiretap was later extended to cover the residential telephones of Monger and his girlfriend, Cynthia Arnold.
 
 
 3
 On June 3, 1986, agents intercepted a call from Joe Lacey, defendant-appellant, to Arnold. Defendant said that someone wanted eight ounces of cocaine and he asked Arnold if she had it. Arnold told defendant that she would call him back. Arnold then placed a call to Monger and asked him, "What kind of price can you give Joe?" Monger did not give her a specific price, and Arnold stated that she would work something out with defendant. Monger told Arnold to tell defendant that next time, defendant should talk to Monger directly. Arnold called defendant and told him she was on her way over.
 
 
 4
 Police followed Arnold to an apartment complex in Memphis. As Arnold walked toward the apartment building, they arrested her and seized eight ounces of cocaine. Arnold indicated that she was going to a particular apartment in the complex and police went to that apartment, knocked on the door, and identified themselves. Defendant and Otha Northington, who were inside the apartment, climbed out a back window and were apprehended as they attempted to flee. In a bedroom of the apartment, police discovered a set of triple-beam scales, cleaning receipts bearing defendant's name, and used airline tickets. At the time of his arrest, defendant possessed a set of car keys which fit a car parked at the complex. Additional cleaning receipts and airline tickets were found in the car.
 
 
 5
 On June 5, 1986, two days after defendant and Arnold were arrested and released, police intercepted a phone call involving defendant, Arnold and Monger. The parties to the phone conversation believed that someone had informed the police of Arnold's attempted delivery, and argued about which "end" the leak came from. In a second conversation on June 5, Arnold told Monger that defendant insisted the leak did not come from his end, and that, for $20,000, he could get a lawyer to take care of everything.
 
 
 6
 Defendant and eleven other persons[1] were indicted on one count of conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. Sec. 846. At trial, tape recordings of the June 3 and June 5 telephone conversations were played to the jury. The jury returned a guilty verdict and defendant was sentenced to eight years' imprisonment.
 
 
 7
 As his first assignment of error, defendant challenges the sufficiency of the evidence to sustain his conspiracy conviction. In reviewing a sufficiency claim, "this court does not sit as a trier of fact and may not enter into a de novo consideration of the evidence." United States v. Ayotte, 741 F.2d 865, 867 (6th Cir.), cert. denied, 469 U.S. 1076 (1984). Rather, we determine whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 8
 The essence of a conspiracy under 21 U.S.C. Sec. 846 is an agreement to violate the federal narcotics laws. See United States v. Flowers, 818 F.2d 464, 467 (6th Cir.), cert. denied, 107 S.Ct. 2196 (1987). An agreement between conspirators need not be formal or express, but may be inferred from acts committed with a common purpose. Ayotte, 741 F.2d at 867.
 
 
 9
 "[T]he government must prove that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it." United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986). After the existence of a conspiracy has been established, only slight additional evidence is required to connect a particular defendant with it. United States v. Hamilton, 689 F.2d 1262, 1275 (6th Cir.1982), cert. denied, 459 U.S. 1117 (1983). A defendant may be a party to the conspiracy even though he does not know all the other conspirators or the details of how the conspiracy is to be carried out. The requirement that defendant have knowledge of the conspiracy is satisfied by proof that defendant knew the essential object of the conspiracy. Christian, 786 F.2d at 211.
 
 
 10
 In this case, the indictment charged a conspiracy to possess with intent to distribute, and to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1).[2] The indictment alleged that the conspiracy
 
 
 11
 consisted of an agreement between and among the various co-conspirators allowing for each member thereof to perform certain specific functions designed when each conspirator performed his part to develop a market for and supply users and peddlers with illicit and illegally obtained cocaine.... It was a further object of the conspiracy to collect the proceeds from the distribution of cocaine ... and cause these proceeds to be transmitted from wholesale and retail sellers of cocaine ... to the ultimate suppliers.
 
 
 12
 Defendant argues that the evidence showed only mere presence at the crime scene, mere association with conspirators, or, at best, an attempted sale, none of which are sufficient to tie him to the larger Monger-Memphis International Realtors distribution conspiracy. See Christian, 786 F.2d at 211; United States v. Stanley, 765 F.2d 1224, 1243 (5th Cir.1985). He points to Arnold's testimony at trial that defendant did not know Monger and that she had never talked to defendant about drugs before.
 
 
 13
 We think that the evidence, while not overwhelming, was sufficient to show a conspiracy between defendant and Arnold to distribute cocaine. First, the transaction involved a commercial quantity of drugs. "A large volume of narcotics creates an inference of conspiracy." United States v. Bourjaily, 781 F.2d 539, 545 (6th Cir.1986), aff'd, 483 U.S. ----, 107 S.Ct. 2775 (1987); cf. United States v. Dickey, 736 F.2d 571, 582 (10th Cir.1984), cert. denied, 469 U.S. 1188 (1985) (where large quantities of drugs are involved, each major buyer may be presumed to know he is part of a wide-ranging venture). There was testimony at trial that cocaine for personal use is generally purchased by the gram, and the eight ounces of cocaine Arnold was bringing to defendant had a street value of about $16,000.
 
 
 14
 Arnold testified that defendant said someone else wanted eight ounces of cocaine, and he asked her if she had it. Triple-beam scales, commonly used to weigh narcotics, were found in the apartment where defendant was arrested. Police discovered plane tickets in the apartment and in a car from which the jury could conclude that defendant had traveled between Houston, Memphis, Chicago, Detroit, and Fort Wayne, Indiana in April and May. These facts also support an inference of conspiracy. Cf. United States v. Pennell, 737 F.2d 521, 537 (6th Cir.1984), cert. denied, 469 U.S. 1158 (1985) (large amount of cocaine and possession of equipment used to divide drugs into smaller quantities supported conclusion of conspiracy to possess with intent to distribute cocaine).
 
 
 15
 The conclusion that defendant and Arnold conspired together is further buttressed by evidence that they knew each other prior to this transaction. Arnold first met defendant six or seven years ago when they both lived in Fort Wayne, Indiana. In June 1986, defendant was a resident of Houston, and defense witnesses testified that defendant came to Memphis to search for his daughter. Arnold testified that defendant did not tell her where he was staying in Memphis, but she "kind of knew" where he was because she had been to that apartment before to check on it for defendant.
 
 
 16
 Because a defendant need not know all the parties to the illegal agreement in order to be guilty of conspiracy, it was not necessary for the government to prove in this case that defendant actually knew Monger and was aware of the operation of Memphis International Realtors. However, the jury could have inferred from the telephone conversation between Arnold and Monger on June 3 that Monger also had an ongoing relationship with defendant. When Arnold called Monger to ask about the price for the eight ounces of cocaine, she identified her customer simply as "Joe." The government suggested that the jury could infer that Monger knew who defendant was and to whom Arnold referred, and therefore further identification was unnecessary. In addition, Arnold's question, "What kind of price can you give Joe?", implies that perhaps there was a special price for defendant. Finally, Monger instructed Arnold that defendant should deal directly with him in the future.
 
 
 17
 When all these facts and circumstances are considered in the light most favorable to the government, we conclude that there was sufficient evidence from which the jury could find that defendant knew of the essential object of the conspiracy and knowingly agreed to participate in the distribution of cocaine. This case can be distinguished from United States v. Gaviria, 740 F.2d 174 (2d Cir.1984), because in this case defendant affirmatively acted to further the conspiracy by requesting a delivery of cocaine, whereas the defendant in Gaviria was merely present at the transaction.
 
 
 18
 Defendant next contends that the district court erred in admitting into evidence the telephone conversations intercepted by police. Under Fed.R.Evid. 801(d)(2)(E), statements made by a coconspirator during the course and in furtherance of the conspiracy are not hearsay, and may be admitted against any other coconspirator, even if the coconspirator was not present when the statements were made. This rule is based on the rationale that coconspirators, as partners in crime, are considered to be agents for one another, and acts and declarations made in furtherance of the common plan are admissible against each participant. Anderson v. United States, 417 U.S. 211, 218-19 n. 6 (1974); 4 J. Weinstein & M. Berger, Weinstein's Evidence Sec. 801(d)(2)(E) at 801-232-33 (1987). Statements made by coconspirators after the illegal objective has been achieved and the conspiracy has terminated are not admissible against other coconspirators because the agency relationship has also terminated. The requirement that the declarant's statements must be in furtherance of the conspiracy before they are admissible against other conspirators is analogous to the principle of agency law that the principal is only bound when an agent acts within the scope of his authority. The "in furtherance" element is designed to strike a balance between the government's need for proof of conspiracy, and the defendant's need for protection from the idle chatter, inadvertent misrepresentation, or deliberate falsifications of coconspirators. Id. at 801-235.
 
 
 19
 Before admitting coconspirators' hearsay statements, the district court must find, by a preponderance of the evidence, that the statements satisfy the requirements of Fed.R.Evid. 801(d)(2)(E); that is, that the declarant and defendant were members of a conspiracy, and the statements were made in the course of and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. ----, 107 S.Ct. 2775, 2778-79 (1987). In making this preliminary factual determination, the district court may consider the statements sought to be admitted. Id. at 2782. At the close of the government's case, the district court entered on the record its findings that the recorded telephone conversations were admissible under Fed.R.Evid. 801(d)(2)(E).
 
 
 20
 Defendant argues that the telephone conversations on June 3 should not have been admitted into evidence because there was insufficient evidence of defendant's participation in the conspiracy. We have already determined that there was sufficient evidence to convict defendant of conspiracy; therefore, these two conversations were properly admitted.
 
 
 21
 As his final assignment of error, defendant argues that the district court erred in admitting the two conversations on June 5 because the statements were not made in the course of and in furtherance of the conspiracy.
 
 
 22
 We disagree with defendant's contention that the conspiracy terminated on June 3, 1986, when defendant, Arnold and Northington were arrested. "[W]here a conspiracy contemplates a continuity of purpose and a continued performance of acts, it is presumed to exist until there has been an affirmative showing that it has terminated; and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn." Hamilton, 689 F.2d at 1268 (quoting United States v. Mayes, 512 F.2d 637, 642-43 (6th Cir.), cert. denied, 422 U.S. 1008 (1975)). Many court have held that the fact of arrest does not protect the arrested conspirator from admission of statements made by unarrested coconspirators while the conspiracy is still continuing. See 4 J. Weinstein, supra, 801(d)(2)(E) at 801-249-50 nn. 63-64 and cases collected therein. The indictment charged that the conspiracy continued until about July 10, 1986, and particularly alleged specific overt acts concerning the distribution of cocaine which were committed after June 3 by other coconspirators who had not yet been arrested. Defendant did not make any showing that the conspiracy had been abandoned or that he had withdrawn.
 
 
 23
 The more troublesome question is whether the conversations were in furtherance of the conspiracy. In the first conversation, defendant, Arnold and Monger agreed that Arnold had been set up, and that the police knew she was going to make a delivery of cocaine on June 3. Defendant stated that he did not know which "end" the leak to police came from, and because he was afraid that the phone was tapped he was not going to say anything over the phone. The jury could infer from the reference to "end" that defendant was a member of an organization in which each participant performed different functions designed to serve as links in the chain of distribution of cocaine and collection of the proceeds, as alleged in the indictment. The district court correctly noted that whether or not this conversation was in furtherance of the conspiracy, defendant's statements were admissible against him under Fed.R.Evid. 804(b)(3) as statements against his interest because they tend to subject him to criminal liability.
 
 
 24
 The second conversation involved only Arnold and Monger. Arnold was interrupted by a phone call from defendant. Arnold placed Monger on hold while she took defendant's call; then she discussed what defendant had said with Monger. Arnold told Monger that defendant insisted the leak did not come from his "end," and particularly, not from a girl with whom defendant was associated. Arnold suspected that this girl had gone to the police because she did not like Arnold. Defendant asked Arnold to tell the police that she had lied when she told them the cocaine was for Northington, so that Northington could be released from jail. Defendant also suggested that for $20,000 he could obtain a lawyer who would take care of everything.
 
 
 25
 The government argues, and the district court agreed, that this conversation was in furtherance of the conspiracy because it concerns how defendant and Arnold could avoid the charges against them, keep the organization together, and continue the distribution of cocaine. The Supreme Court has held that statements regarding concealment of the conspiracy, made after the criminal objective is completed, are not in furtherance of the conspiracy. See Krulewitch v. United States, 336 U.S. 440 (1949). But declarations regarding concealment, made to protect an ongoing conspiracy from detection and to permit the conspirators to achieve their objective, are considered to be in furtherance of the conspiracy. E.g., United States v. Howard, 770 F.2d 57, 60-61 (6th Cir.1985); United States v. De Peri, 778 F.2d 963, 981-82 (3d Cir.1985), cert. denied, 475 U.S. 1110 (1986); United States v. Griggs, 735 F.2d 1318, 1324-25 (11th Cir.1984).
 
 
 26
 The second conversation on June 5 between Monger and Arnold concerned defendant's efforts to find out who the informant was, to get Northington out of jail, and to avoid the charges. The statements were intended to further the conspiratorial objectives by plugging any leaks, preventing further arrests, and returning arrested conspirators back to the organization. "In any case, we recognize that where the admissibility of the coconspirators' statements presents a close call we should not disturb the district court's finding." Hamilton, 689 F.2d at 1270-71.
 
 
 27
 Accordingly, finding no error in the trial, we affirm defendant's conviction.
 
 WELLFORD, Circuit Judge, concurring:
 
 28
 This is a troubling case, not because I entertain any reasonable doubt about the defendant's involvement in a substantial drug transaction, but rather because of the conspiracy charge and the admission of the June 5, 1986 telephone call into evidence. Judge Norris has satisfactorily set out the facts and the circumstances of the case. It is less certain, however, that, without proof of the June 5 call, there was sufficient evidence to convict the defendant of the drug conspiracy charge. Judge Norris characterizes the evidence, which includes the contested call, as "not overwhelming," and I agree with this assessment.
 
 
 29
 The evidence establishes that Lacey knew, and had past associations with, co-defendant Arnold who clearly was a member of the Monger drug conspiracy operation in Memphis. There is little evidence that Lacey knew Freeman Monger or the other codefendants involved with Monger, except Arnold, before the June 3 arrest of Arnold and Lacey. It is also clear that Lacey contacted Arnold to obtain a substantial quantity of cocaine which could reasonably be assumed to be for further distribution.
 
 
 30
 It is also evident that Monger's drug operations continued and extended before June 3 or June 5 and after the time that Arnold and Lacey were arrested and released from custody. There was, however, no substantive offense charge made against Lacey or against Otha Northington, who apparently shared the apartment which was the scene of the June 3 arrest. Arnold testified that Lacey knew nothing, as of June 3, of her relationship with Monger and was aware only of her agreement to deliver him the cocaine he sought. There is no evidence that Lacey had further dealings with the conspirators except for a telephone call or calls after his arrest and release in which Lacey claimed he did not "set up" Arnold and was trying to hire a lawyer "for everything to get taken care of."
 
 
 31
 I harbor doubts about the admissibility of the June 5 calls as a part of the continuing conspiracy as it relates to Lacey. At the same time, if it were error to admit the call or calls, after careful consideration of their content, I am satisfied that such error, if any, was harmless. Lacey does not relate in the conversation any information that connects him to Monger or other alleged conspirators, except Arnold; he maintains that he was not the one who tipped off the police to the cocaine delivery and that he was trying to get a lawyer to defend himself (and also Arnold and Northington) after his arrest.
 
 
 32
 There is ample evidence that Lacey conspired at least with Arnold, if with no one else, to possess cocaine with the intent to distribute it. There is also ample evidence that Arnold was then part of the Monger group which was distributing drugs and that her role was to deliver the drugs as she did in this case. It seems immaterial whether or not Lacey was acting as an agent for Northington.
 
 
 33
 In sum, having expressed some reservations about those elements of the case that are troubling, I am satisifed that there was no reversible error in the verdict of the jury and in the judgment of conviction entered by the district court.
 
 JULIAN A. COOK, District Judge,* concurring:
 
 34
 I write to express my belief that while the two June 5, 1986 telephone calls involving Lacey were admissible to prove his involvement in a "continuing conspiracy" with Arnold and Monger, they were the items of evidence without which Lacey's conviction would have been unreasonable.
 
 
 35
 In my view the June 5 calls constitute the requisite "independent evidence" of conspiracy which is needed to make a single act (here, the attempted Arnold-Lacey transaction of June 3) sufficient to establish a conspiracy. United States v. Pantoja-Soto, 739 F.2d 1520 (11th Cir.1984); United States v. Watson, 594 F.2d 1330, 1337 (10th Cir.1979).
 
 
 36
 It is no bar to the admissibility of the telephone calls that one of them did not involve Lacey or that neither call mentioned his name except to refer to him as "Joe." Circumstantial evidence is often the only available evidence of a conspiracy, except for conspiracies among the "veriest bunglers," United States v. Valenti, 134 F.2d 362, 364 (2d Cir.1943). It is well-settled that such evidence may be used to prove a conspiracy. United States v. Thompson, 533 F.2d 1006 (6th Cir.), cert. denied, 429 U.S. 939 (1976).
 
 
 37
 However, I do not agree with the suggestion that to consider the telephone calls, if error, was harmless. Without those conversations, Lacey's conviction could have been based only upon an inference that (1) he knew of the scheme because he conspired with Arnold to possess contraband on June 3, and (2) Arnold was involved in the scheme. Such reasoning is perilously close to the "piling [of] inference upon inference" which the courts have prohibited in conspiracy cases. United States v. Sheikh, 654 F.2d 1057, 1063 (5th Cir.1981). Moreover, Lacey's mere presence at the scene of the arrests, even when followed by flight, is insufficient to warrant an inference of guilt. United States v. Pantoja-Soto, 739 F.2d 1520, 1526 (11th Cir.1984).
 
 
 38
 With this reservation, I concur in the opinion of the Court.
 
 
 
 *
 The Honorable Julian A. Cook, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Monger and Arnold were named as codefendants on the conspiracy count, and were also charged with other offenses. Arnold entered into a plea bargain and pleaded guilty to the conspiracy count only. Northington was charged with possession of cocaine and aiding and abetting by separate indictment, which was later dismissed
 
 
 [2]
 The indictment charged that the conspiracy included both cocaine and marijuana. However, there was no proof that marijuana was involved and the district court instructed the jury to disregard any references in the indictment to marijuana
 
 
 *
 The Honorable Julian Abele Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation