895 F.2d 1415
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edith J. LEE, M.D., Defendant-Appellant.
 No. 89-1811.
 United States Court of Appeals, Sixth Circuit.
 Feb. 9, 1990.
 
 Before MILBURN and ALAN E. NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Dr. Edith Lee appeals her conviction for conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. Secs. 841(a)(1) and 846 (Count One), and her convictions for distribution of controlled substances in violation of 21 U.S.C. Sec. 841(a)(1) (Counts Two through Six). Appellant argues that her convictions must be reversed because the government agents did not intend to fill the prescriptions that she issued, because the government violated a discovery order, and because prosecutorial misconduct denied her a fair trial. For the following reasons we find these assignments of error to be without merit and therefore affirm Dr. Lee's convictions.
 
 I.
 
 2
 Dr. Lee was indicted by a federal grand jury for conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. Secs. 841(a)(1) and 846. She was also charged with five counts of distribution of the controlled substances Demerol, Dilaudid, and Percodan in violation of 21 U.S.C. Sec. 841(a)(1). The indictment alleged that Dr. Lee was prescribing drugs outside the course of medical practice. Lee's codefendants were pharmacists who filled the prescriptions and individuals obtaining, selling, or consuming the drugs.
 
 
 3
 Lee, a Highland Park, Michigan, physician, was the central figure in this conspiracy to distribute prescription drugs. Mary Watkins, a twenty-year acquaintance of Dr. Lee, acted as the appellant's "secretary." Watkins handed Lee names, drug orders, and money, then waited as the appellant wrote the prescriptions. Watkins helped Lee set prescription prices and coordinate prescription orders. Watkins and other coconspirators would buy prescriptions from Dr. Lee in the names of their friends and relatives and fill the prescriptions at various pharmacies. The purported patients were never examined by Lee. Instead, these "patients" simply paid a fee according to the medication desired, from $15 for Empirin # 4 to $100 for Dilaudid. Nevertheless, if a pharmacist called to question whether a prescription had been legitimately issued, Dr. Lee would order that it be filled.
 
 
 4
 Dr. Lee's customers enlisted others to pose as Lee's patients in order to present prescriptions to cooperating pharmacists including codefendant Sidney Brickner. Dr. Lee twice ordered prescription drugs in bulk from pharmaceutical companies and allowed Watkins to sell the pills directly without going through the charade of Dr. Lee issuing prescriptions.
 
 
 5
 Undercover FBI Agent David Wilson ordered, paid for, and obtained three prescriptions issued by Dr. Lee though Agent Wilson was never examined by Lee. Furthermore, FBI agents testified to the execution of search warrants at numerous drugstores and the seizure of unusually large numbers of narcotics prescriptions written by Dr. Lee. Tape recordings of wire-tapped conversations between coconspirators were also played to the jury. FBI Agent John Ransom, a handwriting expert, testified that he compared certain prescriptions purportedly written by Dr. Lee to handwriting samples submitted by Lee. Agent Ransom concluded that the prescriptions at issue were written by the appellant.
 
 
 6
 Dr. Lee argued that she had been manipulated by codefendants who convinced her that she was performing a service to the community by treating drug addicts with legally prescribed medicine. Dr. Gregory Berger, an expert in the drug field, testified, however, that it is not accepted medical practice to prescribe Dilaudid, Percodan, or Demerol without examining the patient and reviewing the patient's medical history. Dr. Berger added that these drugs have no legitimate use in the treatment of drug addiction.
 
 
 7
 Dr. Lee and three codefendants were convicted following a jury trial in November, 1988. Lee was sentenced to six concurrent fifteen year terms. She timely filed this appeal.
 
 II.
 A.
 
 8
 Counts two through six of the indictment charged the appellant with violating 21 U.S.C. Sec. 841(a)(1) by "knowingly, intentionally, and unlawfully distribut[ing]" various controlled substances by issuing prescriptions "which she knew were not issued in the usual course of medical practice for a legitimate medical purpose." The appellant argues that her convictions must be reversed because all of the prescriptions specified in counts two through six were issued to undercover agents who kept the prescriptions for evidence and made no attempt to use them to obtain the controlled substances.[1]
 
 
 9
 The term "delivery" is defined in 21 U.S.C. Sec. 802(8) as the "actual, constructive, or attempted transfer of a controlled substance...." Relying on this definition, this court has previously held that "the writing of the illegal prescriptions completes all the elements of the offense prohibited by section 841(a)(1)." United States v. Flowers, 818 F.2d 464, 467 (6th Cir.), cert. denied, 481 U.S. 1056 (1987). This court continued:
 
 
 10
 The term "delivery" is defined in section 802(8) as the "actual, constructive, or attempted transfer of a controlled substance...." As the Third Circuit concluded in United States v. Tighe, a prescription for a controlled substance "cannot be regarded as less than the constructive or attempted transfer of the substance itself, since a prescription is the written representation of the drug and enables its possessor to claim physical custody and control over the drug prescribed."
 
 
 11
 Id. (citations omitted). Similarly, both the Supreme Court and this court have upheld the convictions of physicians who were found in violation of section 841(a)(1) by virtue of their selling prescriptions for controlled substances outside the usual course of professional practice. See United States v. Moore, 423 U.S. 122 (1975); United States v. Kirk, 584 F.2d 773 (6th Cir.), cert. denied, 439 U.S. 1048 (1978). See also United States v. Davis, 564 F.2d 840 (9th Cir.1977), cert. denied, 434 U.S. 1015 (1978) (a physician distributes within the meaning of section 841(a) by merely writing a prescription outside the usual course of professional practice that is not intended for a legitimate medical purpose); United States v. Bartee, 479 F.2d 484, 488 (10th Cir.1973) (writing the prescription completes all the elements of the crime in a section 841(a)(1) case).
 
 
 12
 Accordingly, the government was not required to prove that the undercover agents who obtained the prescriptions from Dr. Lee intended to present the prescriptions to obtain the controlled substances. The offense was complete when the appellant issued the prescriptions outside the course of legitimate medical practice. Appellant's contention that her conduct did not violate section 841(a)(1) is therefore rejected.
 
 B.
 
 13
 Appellant next contends that the district court abused its discretion by refusing to declare a mistrial after the government offered a strongly worded document as rebuttal evidence without first disclosing it to the defense. The document in question was a handwritten note written by pharmacist Sidney Brickner to his partner Neil Tubben.
 
 
 14
 Though codefendant Brickner did not testify at trial, his son testified that Tubben informed Sidney Brickner that the appellant's prescriptions were legitimate. The government called Tubben as a rebuttal witness. Tubben testified that both pharmacies he and Brickner owned filled an unusually large number of prescriptions for Schedule II controlled substances written by Dr. Lee. When Tubben questioned this practice, Brickner threatened him with "economic sanctions" unless he continued to fill Dr. Lee's prescriptions. In support of Tubben's allegations the government offered Exhibit 148, a note written by Sidney Brickner to Tubben.[2] The district court allowed the note to be read by Tubben to the jury.
 
 
 15
 The defense, during cross-examination of Tubben, inquired as to when Tubben first informed the government of the note's existence. Tubben testified that he had given the note to the government attorney the previous week, but had mentioned the note to an FBI agent weeks earlier. Brickner's counsel thereupon moved for a mistrial claiming that the note should have been turned over to defense counsel during discovery. The government's attorney informed the court that she did not learn of the note's existence until the trial was well underway, and that she produced the note only because of the nature of Brickner's defense. The district court judge took the matter under advisement. The judge ultimately struck the exhibit and offered a lengthy cautionary instruction to the jury, but denied the motion for a mistrial.
 
 
 16
 Appellant argues on appeal that the jury could not follow the court's instruction to disregard the sharply worded note. However, the decision whether to grant a mistrial is a matter within the sound discretion of the district court. United States v. Battista, 646 F.2d 237, 247 (6th Cir.), cert. denied, 454 U.S. 1046 (1981). Though the language of the note is admittedly forceful, defense counsel initially objected only to the note's authenticity. We therefore affirm the district court's denial of appellant's motion for a mistrial based on the note's "shocking" language.
 
 
 17
 Regarding the government's discovery violation, "[t]he ultimate question is whether the denial of discovery deprived defendants of a fair trial." United States v. Porter, 701 F.2d 1158, 1162 (6th Cir.), cert. denied, 464 U.S. 1007 (1983). Furthermore, "clear and forceful" curative instructions may be sufficient to cure the prejudice resulting when a jury hears inadmissible evidence. United States v. Bowers, 739 F.2d 1050, 1054-55 (6th Cir.), cert. denied, 469 U.S. 861 (1984). Though the government knew of the note's existence before trial and professed negligence in not making it available earlier, the government's actions did not violate any specific discovery order, nor did the prosecution withold exculpatory material. Because Dr. Lee has not shown prejudice resulting from Brickner's note, this court finds no discovery abuse worthy of a mistrial. Appellant's second assignment of error is therefore without merit.
 
 C.
 
 18
 Appellant next argues that her conviction must be reversed because the prosecutor "engaged in a series of actions intended to prevent the jury from deciding the case solely on the evidence." It is well settled, however, that a defendant is not entitled to a new trial unless the prosecutorial misconduct is "so pronounced and persistent that it permeated the entire atmosphere of the trial." United States v. Vance, 871 F.2d 572, 577 (6th Cir.) (quoting United States v. Mahar, 801 F.2d 1477, 1503 (6th Cir.1986)), cert. denied, 110 S.Ct. 323 (1989). Appellant cites five instances of allegedly improper conduct.
 
 
 19
 Dr. Lee initially argues that the government impermissibly attempted to disparage her codefendant's character by introducing Sidney Brickner's strongly worded note. However, as discussed above, the district court adequately resolved any discovery violation by instructing the jury to disregard the note. Furthermore, Dr. Lee has failed to explain how she could have been prejudiced by the jury's exposure to Brickner's use of offensive language.
 
 
 20
 Second, the appellant contends that the government tainted the proceedings by using the word "Mafia" in its closing argument. The appellant cites United States v. Love, 534 F.2d 87 (6th Cir.1976), and United States v. Perry, 512 F.2d 805 (6th Cir.1975), to support her contention. Whereas these two cases referred to the Mafia in a context directly reflecting on the defendants' characters, the mention of "Mafia" in the instant action carried no suggestion that the appellant was a member of organized crime. The government's closing argument, in pertinent part, noted:
 
 
 21
 There are some things that conspiracy is not, and I don't want to belabor them but I want you to understand that a conspiracy does not require the proof of a formal organization. Conspiracies aren't corporations. You don't go to the Secretary of State's Office and file Articles of Conspiracy. There may be formal organizations which are criminal conspiracies, the Mafia might be an example or a labor racketeering organization, but it isn't required. We don't have to prove a chain of command or specialized roles or chains of communication. It can be a looser organization than that. We don't have to prove, for example, that any particular Defendant knew all the other members of the conspiracy. That isn't necessary. You don't have to know the big picture, all you have to know is that you are combining with one or more persons to accomplish an unlawful purpose. It isn't necessary that we prove that any one individual Defendant knew all of the means or instruments by which the unlawful purpose is to be accomplished.
 
 
 22
 Although the government's use of the term "Mafia" was inadvisable, we find no error in the "Mafia" reference.
 
 
 23
 Appellant next argues that the government improperly asked the jury to "speculate" on the evidence. After careful review of the record we find no merit to this contention. The prosecutor merely drew certain logical inferences from the testimony. Furthermore, the appellant has failed to explain how the prosecutor's comments could have prejudiced her defense. This court finds no error in the government's closing argument.
 
 
 24
 Appellant next contends that prosecutorial misconduct occurred when the prosecutor elicited a response that codefendant Larry Williams was a "crack-head." However, as the district court correctly held, Williams' attorney had opened the door to this subject by asking the witness whether she "liked" Williams. Furthermore, Dr. Lee has failed to explain how this comment regarding Larry Williams prejudiced her defense.
 
 
 25
 Finally, Dr. Lee argues that the government erroneously called Dr. Berger, a physician, to testify regarding the effects of the prescription drugs distributed by the conspirators. Appellant relies on United States v. Green, 548 F.2d 1261 (6th Cir.1977), in which this court held that expert testimony on the effects of DMT, an hallucinogen, was "of both dubious relevance and cumulative prejudicial impact." Id. at 1268. Green, however, is clearly distinguishable from the instant action. The effect of the drug on users was not at issue in Green whereas Dr. Lee argued that she was prescribing these drugs as legitimate treatment for persons addicted to street drugs. Dr. Berger's testimony was therefore relevant to explain that the drugs appellant prescribed were not properly used to treat drug addicts. Furthermore, by explaining the drugs' properties, Dr. Berger demonstrated that appellant had acted "outside the course of legitimate medical practice" by prescribing addictive drugs to persons that she had not examined. Because Dr. Berger's testimony was properly admitted, appellant's final assignment of error is without merit.
 
 
 26
 For the foregoing reasons, Dr. Lee's convictions are AFFIRMED.
 
 
 
 [1]
 The government, citing United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984), argues that this court's review of the sufficiency of the evidence is severely limited by appellant's failure to renew her motion for judgment of acquittal at the close of all the evidence. We need not address appellee's contention because appellant's argument is substantively without merit
 
 
 [2]
 The note read in pertinent part:
 Goddammit Neal if you think that you will arbitrarily just fill a few get your fucken ass out. Why do you turn down Dr. Lee. I should leave you shit cocksucker. You were pretty fucken fast to come here and pick up this money. Why can't you get your lazy ass her (sic) on time to do business. You had better get things straight soon and now.