940 F.2d 663
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul Adeninji MAKINDE, Defendant-Appellant.
 No. 90-2199.
 United States Court of Appeals, Sixth Circuit.
 Aug. 2, 1991.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Paul Adeninji Makinde, appeals his conviction for violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2 for possession with intent to distribute heroin and 21 U.S.C. Secs. 846 and 841(a)(1) for conspiring to possess heroin with intent to distribute.
 
 I.
 
 2
 Defendant's arrest resulted from a joint investigation between the Drug Enforcement Agency ("DEA") and the Royal Canadian Mounted Police ("RCMP") into the activities of an international heroin trafficking organization involving Nigerian nationals. In February 1990, the RCMP received a court ordered authorization to place a wiretap on the telephone of a Windsor, Ontario resident suspected of heroin trafficking. Between February 1990 and March 20, 1990, a number of phone calls were intercepted which indicated that an individual identified as Tony Sobowale, of Chicago, Illinois, was involved in the distribution of heroin. Sobowale planned several unsuccessful Detroit meetings with the Windsor, Ontario resident, but on at least two occasions Sobowale failed to attend.
 
 
 3
 On March 20, 1990, the DEA initiated surveillance in the downtown area of Detroit, Michigan near the Greyhound bus station in response to information received from the RCMP that two persons were traveling to Detroit from Chicago, Illinois with a large quantity of heroin. Updated information, received during the day, revealed the expected arrival time of the individuals and that they would be traveling in a white 1990 Buick Park Avenue automobile.
 
 
 4
 At approximately 9:45 p.m., special agents of the DEA observed a 1990 white Buick Park Avenue with Illinois license plates parked on the south side of Lafayette, west of the John C. Lodge Service Drive, across from the Greyhound bus station. In addition, two males were observed in the bus station. One was looking out the window and the other was on the telephone. Later the two individuals exited the bus station and entered the white 1990 Buick Park Avenue. Both individuals remained in the vehicle and did not drive away.
 
 
 5
 Shortly thereafter, Special Agent James O'Brien, along with other agents, approached the vehicle. As O'Brien approached the driver's side, with the aid of a flashlight, he observed defendant with a McDonald's styrofoam food container that was open and revealed a clear plastic bag with a white powdery substance in it. Defendant closed the container and threw it into the back seat. The agents then ordered defendant and the other man, co-defendant Tony Sobowale, out of the vehicle.
 
 
 6
 After the individuals exited the vehicle, Special Agent James Halverson retrieved the McDonald's styrofoam container that was on the back seat. It was open with the clear plastic bag visible. The bag contained what was later determined to be heroin. Sobowale and defendant were placed under arrest.
 
 
 7
 After the arrest, a quantity of heroin contained in three separate clear plastic baggies was found behind the back seat arm rest of the vehicle. Then defendant was searched. In his wallet, the agents found an Illinois driver's license in the name of Yusuff Mumuni. Later, defendant was interviewed by Special Agent Timothy Houghtaling of the Immigration and Naturalization Service in an effort to determine defendant's alien status. Defendant indicated to Special Agent Houghtaling that the name on his birth certificate was Yusuff Bolaji Mumuni and that the DEA had custody of his Illinois driver's license.
 
 
 8
 Defendant, along with co-defendant Tony Sobowale, was charged in a three-count indictment dated April 17, 1990 with: (1) possession with intent to distribute heroin and aiding and abetting in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2; (2) conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. Secs. 846 and 841(a)(1); and (3) possession of a false identification document with intent that the document be used to defraud the United States in violation of 18 U.S.C. Sec. 1028(a)(4). The indictment charged defendant under five names, Paul Adentinji Makinde and the following four aliases: (1) Yusuff Bolaji Mumuni, (2) Biola Yusuf Mumuni, (3) Babajide Sobatan, and (4) Olymuyima Sunday Boyede.
 
 
 9
 Prior to trial on July 13, 1990, co-defendant Tony Sobowale pleaded guilty per the terms of a Rule 11 plea agreement.
 
 
 10
 After a two-day jury trial in the United States District Court for the Eastern District of Michigan, defendant was convicted on counts one and two. At the close of the government's proof, defendant had moved for judgment of acquittal on all counts pursuant to Fed.R.Crim.P., Rule 29. The trial court entered a judgment of acquittal as to count three only. Defendant subsequently filed two motions for a new trial, which were denied.
 
 
 11
 On October 16, 1990, defendant was sentenced to the custody of the United States Bureau of Prisons for a period of 78 months. Defendant timely filed this appeal.
 
 II.
 
 12
 Defendant contends that the evidence was insufficient to sustain his convictions for possession with intent to distribute heroin and conspiracy to possess with intent to distribute heroin. In addressing the sufficiency of the evidence, the standard of review for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 475 U.S. 1017 (1986). All inferences which may reasonably be drawn from the evidence, as well as all conflicts in the testimony, must be resolved in the government's favor, whether the evidence is direct or circumstantial. See Gallo, 763 F.2d at 1518; United States v. Tilton, 714 F.2d 642, 645 (6th Cir.1983); Holland v. United States, 348 U.S. 121, 140 (1954). If, under such a review, sufficient evidence exists to justify a finding of guilt beyond a reasonable doubt, the conviction must be affirmed. Tilton, 714 F.2d at 646; Jackson, 443 U.S. at 318. The evidence need not exclude every logical hypothesis other than guilt. United States v. Johnson, 741 F.2d 854, 856 (6th Cir.), cert. denied, 469 U.S. 1075 (1984).
 
 
 13
 The essence of a conspiracy under 21 U.S.C. Sec. 846 is an illegal agreement to violate the federal narcotics laws. See United States v. Flowers, 818 F.2d 464, 467 (6th Cir.), cert. denied, 481 U.S. 1056 (1987). "[T]he government must prove that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it." United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986). An agreement between conspirators need not be formal or express, but may be inferred from acts committed with a common purpose. United States v. Ayotte, 741 F.2d 865, 867 (6th Cir.), cert. denied, 469 U.S. 1076 (1984). A conviction for a principal offense of conspiring to possess with intent to distribute requires specific intent to distribute. United States v. Pope, 561 F.2d 663, 670 (6th Cir.1977). A trier of fact can find intent to distribute given sufficient evidence to support an inference that the drugs were not for the defendant's own personal use but were to be passed on to others. See United States v. Giles, 536 F.2d 136, 141 (6th Cir.1976).
 
 
 14
 Defendant contends that the evidence in the present case is as consistent with innocence as it is with guilt and that this court held in United States v. Leon, 534 F.2d 667, 677 (6th Cir.1976) that when such is the case, the evidence necessarily fails to establish guilt beyond a reasonable doubt.
 
 
 15
 We disagree that the evidence is as consistent with innocence as it is with guilt. Contrary to defendant's contention that his participation in the conspiracy is based only on his presence in a vehicle containing heroin, his participation is based on agent O'Brien's observation of him handling a McDonald styrofoam container with heroin inside and on defendant's statements about his relationship with co-defendant Sobowale, whom he admitted he knew and that he had driven with him from Chicago to Detroit.
 
 
 16
 Moreover, even if there is a plausible inference of innocence for this behavior, it need not be considered by the district court in reviewing the sufficiency of the evidence. In United States v. Van Hee, 531 F.2d 352 (6th Cir.1976), the jury found the defendants guilty of conspiracy to violate the Munitions Control Act. Although the government produced no direct evidence of a conspiracy, the record contained evidence of activities of the men from which a reasonable inference could be drawn that they were engaged in a conspiracy. Id. at 357. The defendant argued that the evidence was insufficient because there was a plausible theory based on the evidence that he was innocent. This court rejected his argument, noting that "a finding of guilt may be based on circumstantial evidence which does not 'remove every reasonable hypothesis except that of guilt.' " Id. at 358 (citation omitted). Thus, even if there is a plausible hypothesis of innocence, a finding of guilt may still be made if it is also a reasonable conclusion.
 
 
 17
 In the present case, when the evidence is construed in the light most favorable to the government, it must be taken as a fact that Agent O'Brien saw defendant in possession of a container later found to contain heroin. By its verdict, the jury found this evidence to be credible. The jury could reasonably conclude that one does not handle a McDonald styrofoam box containing heroin unless one is part of a conspiracy to possess and distribute heroin.
 
 
 18
 Special Agent O'Brien testified that in his 5 years experience as a special agent with the DEA and 13 years with the Detroit Police Department, he had been involved in 200-300 narcotics arrests. He explained that consumption amounts of heroin typically are found in amounts of a "few grams" and the purity level may range from 3 to 15 percent purity. The jury could reasonably conclude that defendant's possession of greater than 100 grams of heroin was thus not consistent with possession intended for consumption, but was instead consistent with intention to distribute. This evidence, in addition to trial testimony concerning the concealed heroin in the car driven by Tony Sobowale, coupled with defendant's testimony that he knew the co-defendant and was driving with him to Detroit from Chicago was sufficient for the jury to conclude that defendant was a member of a conspiracy.
 
 
 19
 Reviewing the evidence in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80 (1942), we believe there was sufficient evidence for the jury to convict defendant of possession with intent to distribute heroin and conspiracy to possess with intent to distribute. Therefore, the district court is affirmed on this issue.
 
 III.
 
 20
 Defendant argues that the government improperly argued facts not in the record during closing argument, which constituted forensic misconduct sufficient to justify a new trial. This argument stems from four instances during closing argument in which the Assistant United States Attorney emphasized that defendant had used four names and four birthdates. Because these statements were not objected to by defendant's counsel, this court must review this issue under the plain error doctrine. Fed.R.Crim.P., Rule 52; United States v. Busacca, 863 F.2d 433, 435 (6th Cir.1988), cert. denied, 490 U.S. 1005 (1989). Plain error is defined as an egregious error, one that leads directly to a miscarriage of justice. Id.
 
 
 21
 In order to reverse on the basis of prosecutorial misstatements during closing argument, a court must consider whether the remarks could have misled the jury and prejudiced the accused, whether such remarks were isolated or extensive, whether they were placed deliberately or accidentally before the jury, and the strength of the evidence against the accused. United States v. Leon, 534 F.2d at 679.
 
 
 22
 In the present case during closing argument, the government, in arguing credibility, claimed defendant had used four names and four birthdates, when in reality the evidence showed that defendant utilized four names and only three birthdates. Defendant had been charged in the indictment under the name Paul Adentinji Makinde and the following four aliases: (1) Yusuff Bolaji Mumuni, (2) Biola Yusuf Mumuni, (3) Babajide Sobatan, and (4) Olymuyima Sunday Boyede. During the government's case-in-chief, three names and three birthdates utilized by the defendant were introduced into evidence in order to show simply that defendant was someone other than whom he purported to be when he was arrested. In addition, during cross-examination of defendant by government counsel, defendant acknowledged having a fourth name--"Mr. Boyede." He testified:
 
 
 23
 Q. When you talked to Tim Houghtaling--
 
 A. Yes, Sir
 
 24
 Q. And he was trying to get information from you about who you are and any immigration matters you may have pending, correct?
 
 
 25
 A. Yeah.
 
 
 26
 .............................................................
 
 
 27
 ...................
 
 
 28
 * * *
 
 
 29
 Q. I'm also--or you neither, you didn't say, "I'm Mr. Boyede?" You never told him that either?
 
 
 30
 A. No, no.
 
 
 31
 Q. That is your name also, correct, Jr. Boyede?
 
 
 32
 A. Boyede and Babajide mean the same thing. See, our names, like your name has the same sound, we are given a name it has some other meaning. That is no name at all. Babajide means the reincarnation of a dead father.
 
 
 33
 Evidence was introduced concerning the "birth dates" of all the names except for "Mr. Boyede."
 
 
 34
 The error defendant complains of concerning the number of birthdates is slight. The government introduced the evidence concerning defendant's multiple names to show that on prior occasions defendant had used more than one name and birthdate. It is hard to imagine any additional impact upon the jury or prejudice to the defendant in claiming that defendant had used four instead of three different birthdates. The misstatement is insignificant when one considers the physical impossibility of having multiple birthdates. Defendant testified:
 
 
 35
 Q. Sir, you are not saying that in your culture you can have more than one birthday, correct?
 
 
 36
 A. Yes, sir.
 
 
 37
 Q. So if this driver's license, Government Exhibit # 5 says your birthdate is February 2, 1953, that is incorrect, isn't it?
 
 
 38
 A. It is correct, sir. In my culture, it is logical to have more than one birthdate. Maybe I didn't understand your first question.
 
 
 39
 Q. Okay, so you can have more than one birthday as a Nigerian?
 
 
 40
 A. Yeah.
 
 
 41
 Special Agent Timothy Houghtaling testified on rebuttal that during the course of his duties with the Immigration and Naturalization Service he has come in contact with "hundreds" of Nigerian nationals. He testified that he has never encountered the concept of having more than one birthdate as a Nigerian national. We believe defendant's claims were simply not worthy of belief, regardless of the exact number of birthdates claimed. It was, therefore, permissible for the government to argue that the defendant's use of false names and false birthdates allowed the jury to infer that the defendant was not credible.
 
 
 42
 Finally, we find that there can be little reasonable argument that the prosecutor's actions were anything but unintentional. There is no evidence that the government deliberately injected inflammatory evidence into the trial. United States v. Millen, 594 F.2d 1085 (6th Cir.) (prosecutor stated during closing that defendant was a homosexual), cert. denied, 444 U.S. 829 (1979), nor did the government challenge the defendant's right not to testify, United States v. Smith, 500 F.2d 293 (6th Cir.1974), nor did the prosecutor express his personal opinion as to the guilt of a defendant, United States v. Bess, 593 F.2d 749 (6th Cir.1979). The conduct of the government was far from the intentional, prejudicial conduct pervading the trial and affecting defendant's substantial rights that is necessary to reverse the conviction under the plain error doctrine. For these reasons, we find that the prosecutor's closing arguments did not constitute forensic misconduct sufficient to justify a new trial.
 
 IV.
 
 43
 For the foregoing reasons, the decision of the district court is hereby AFFIRMED.